Ronald C. **ELLIOTT**, Plaintiff and Appellant,

v.

Earl N. **DORIUS**, Director, Driver License Division, Department of Public Safety, Defendant and Respondent.

No. 14388.

Supreme Court of Utah.

Dec. 1, 1976.

---

Gary D. Stott, of Stott, Young & Wilson, Provo, for plaintiff and appellant.

Vernon B. Romney, Atty. Gen., Bernard M. Tanner, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

MAUGHAN, Justice:

Plaintiff appeals from an order of the district court affirming a prior administrative action of revoking his driving privilege for his refusal to submit to a chemical test under the implied consent law, 41–6–44.10. The trial court determined there was probable cause for plaintiff's arrest; a proper request for a chemical test was

made by the arresting officer; and plaintiff refused to take a chemical test, as requested and designated by the officer, without justification. We affirm. All statutory references are to U.C.A.1953, as amended.

The record shows plaintiff was advised of his rights under the law, viz, that if he refused to submit to a properly requested test, the department would revoke his license for one year. He was informed the only test available was the breathalyzer test, and the arresting officer requested he submit to the breath test. The officer further explained the blood test was not available, because the local hospital had refused to draw blood for the police department. Plaintiff's response to the foregoing was his statement he would take the blood test. Thereafter, the arresting officer executed an affidavit setting forth plaintiff's refusal. Based on this refusal to submit to the chemical test designated by the officer, plaintiff's license was revoked in an administrative proceeding.

On appeal, plaintiff contends the order of the trial court should be reversed on the ground the arresting officer did not comply with the statutory requirements of 41–6–44.10. Specifically, plaintiff urges the statute provides a specific time sequence to which the officer must adhere, viz; first, the officer must request a person submit to the test designated, and *after* a refusal, the officer must advise the person of his rights. Plaintiff's claim of noncompliance with the act is predicated on the fact the officer advised him of his rights immediately prior to plaintiff's refusal to submit to the test designated.

Plaintiff relies on *Gassman v. Dorius* [1] to sustain his argument. This court emphasized therein each case is based on its own facts, and the findings of the trial court will be sustained unless there is no reasonable basis in the evidence to support them. The facts in *Gassman* are readily distinguishable from the instant case. In *Gassman*, the police officer had summoned a technician to take a blood test to which the accused had consented to submit. In the interim, the police officer changed his mind, told defendant to forget the blood test, go in another room and submit to a breathalyzer test, Gassman refused. At that moment the technician summoned by the officer arrived, and the officer walked out. This court stated:

. . . The whole tenor of the evidence prompts one to feel that Gassman justifiably believed he could rely on a stipulated blood test and not a second-guessed and second-chosen breath test.[2]

Within the context of the facts we held the statute required Gassman to be informed of his rights *after* his refusal to take the breath test; and reading his rights to him, at the time of his arrest (approximately an hour and fifteen minutes prior to the officer's request for the breath test), did not comply with the statutory provisions of the implied consent law. Here, plaintiff was advised of his rights and the test was designated, by the arresting officer, *contemporaneously*, with the refusal to submit to the selected test. *Gassman* did not hold the failure to comply with the precise sequence set out in 41–6–44.10 constituted noncompliance with the statute. But, under the facts there it did hold a reading of the rights required by statute was mandatory, after the introduction of a new request; viz., to take a chemical test different from the one originally requested by the officer.

Subsection (c) provides:

If such person has been placed under arrest and has thereafter been requested to submit to any one of the chemical tests provided for in subsections (a) or (b) of this section and refuses to submit to such chemical test, the test shall not be given and the arresting officer shall advise the person of his rights under this section. . . .

To accept plaintiff's argument would be to elevate form above substance. The important and mandatory aspects of this subsection are: after his arrest, the

---

1. Utah, 543 P.2d 197 (1975).

2. At p. 199 of 543 P.2d.

person should be informed which chemical test the officer has designated, and the consequences of his refusal to submit to the requested test. To comply with the mandate of the statute, the refusal and the advice, as to the resulting consequences, must be within the same time frame, but not necessarily within a precise sequence—they are integral to each other, and must be so administered.

Plaintiff further contends his refusal was with reasonable cause; on the ground he believed the requested test, the breathalyzer, was unreliable. Subsection (c) provides a person's license or permit shall be revoked for one year, if the department determines "the person was granted the right to submit to a chemical test, and without reasonable cause refused to submit to such test . . ."

■ In construing the meaning of reasonable cause, in this subsection, it is significant the person is granted the right to submit to "a chemical test," the choice of which is by statute, determined by the arresting officer. A stated preference for another chemical test is not a reasonable cause for refusal of a requested test. Plaintiff was so informed by the arresting officer, who read the following:

If the hearing officer determines that you refused to submit to a properly requested test, the Department will revoke your driver's license for one year.

■■ A person may not unilaterally determine one of the tests designated in subsection (a) of 41–6–44.10 to be unreliable; then, on that alone, claim his refusal to submit to such test was with reasonable cause. Plaintiff's refusal is particularly suspect under the facts; he refused the breath test and demanded the blood test after he had been informed the blood test was not available, locally. Furthermore, he did not expressly claim the breath test was inaccurate, but merely described it in uncomplimentary terms. Under such circumstances, the determination of the trial

court that plaintiff's refusal was without reasonable cause must be sustained.

Finally, plaintiff contends the revocation order was erroneous as a matter of law on the ground he did not refuse to submit to a sobriety test, for he was willing to take a blood test. To sustain plaintiff's contention, the mandatory provision in subsection (a) of 41–6–44.10 must be deleted for, it provides:

The arresting officer shall determine within reason which of the aforesaid tests shall be administered.

■ Prior to plaintiff's refusal, the officer not only designated the chemical test to which plaintiff was requested to submit but explained the police did not have access to the personnel who performed the blood test, because of the policy of the local hospital. Plaintiff claims the selection, by the police officer, denied him a reliable test. Such is without merit. A chemical test specified by statute may not be deemed unreliable as a matter of law. The statute specifically designates the arresting officer as the one to determine the test to be administered. Furthermore, plaintiff had an opportunity to contact his own physician to exercise the right granted to him in subsection (g),[3] if he were concerned in good faith about the reliability of the breath test.

ELLETT, Justice (concurring with comment):

I concur with this decision except as to what is said therein about the case of *Gassman v. Dorius* (footnote 1 of the opinion). To avoid extenuation here, let me say that the case is sufficiently set out in the majority decision therein with which I disagreed; and in my dissent thereto, I pointed out wherein I disagreed.

CROCKETT, J., concurs in the views expressed in the concurring opinion of Mr. Justice Ellett.

HENRIOD, C. J., does not participate herein.

3. "The person tested shall be permitted to have a physician of his own choosing administer a chemical test in addition to the one administered at the direction of the peace officer."