IN MATTER OF SUSPENSION OF OPERATING PRIVILEGE OF RICHARD W. BARDWELL: CITY OF MADISON, Appellant, v. RICHARD W. BARDWELL, Respondent.

No. 77–157. *Submitted on briefs May 3, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 618.)

For the appellant the cause was submitted on the briefs of *Henry A. Gempeler,* city attorney, and *John E. Rothschild,* assistant city attorney.

For the respondent the cause was submitted on the brief of *Robert I. Perina* and *Perina & Hoyt* of Madison.

CALLOW, J.  On March 4, 1977, Richard W. Bardwell was arrested on Mineral Point Road in Madison, Wisconsin, and issued a citation for operating a motor vehicle while under the influence of an intoxicant, contrary to Madison Ordinance No. 12.64(1)(a), adopting sec. 346.63(1)(a), Stats. Wisconsin's Implied Consent Statute, sec. 343.305, Stats., provides that any person issued a citation for driving while intoxicated must submit to a chemical test designated by the Police Department if so requested by the traffic officer unless the refusal is reasonable. The issue here is whether respondent Richard W. Bardwell's refusal to submit to the designated breath test, because he considered the breath test to be unreliable, is a reasonable refusal under the statute.

Upon being issued the citation, the respondent was taken to the Police Department where he was informed, pursuant to subsection (2) of the implied consent statute, that he is deemed to have consented to a chemical test of his breath, blood, or urine for the purpose of determining the amount of alcohol in his blood; that if he refuses to submit to the test, he is entitled to a hearing, and if his refusal is found to be unreasonable or if he does not request a hearing, his operator's license will be suspended for sixty days; that in addition to the breath test designated by the Police Department he may, upon request, have an alternate test that the police were prepared to administer or a chemical test of his choice at his own expense.

The respondent refused to take the breath test and asked for a blood test instead. Because of the respondent's refusal to take the designated breath test, pursuant to subsection (2)(b), no test was given; instead, Officer Chudnow filed a report of the respondent's refusal with the court.

The court notified the respondent that the Division of Motor Vehicles intended to suspend his operator's license, and the respondent requested a hearing pursuant to sec. 343.305(7)(c), Stats. The hearing was held on May 11, 1977. At the hearing, the respondent stipulated to the fact that Officer Chudnow had probable cause to believe the respondent was driving while under the influence of an intoxicant. The respondent testified that he refused to take the breath test because, based on his experience as a judge and district attorney, he considered the blood test to provide the only really significant evidence of intoxication. He testified further that the blood test was the best test and that the blood test would have been convenient in his case since his own hospital, the Methodist Hospital, was just around the corner. In a memorandum decision, dated May 27, 1977, the court found that the respondent's refusal was reasonable: "The Court feels that defendant's experience and understanding of the pitfalls in the use of the breathalyzer test is surely as substantial a basis for refusing as utter drunkeness." The City has appealed.

Since the appeal was filed, the respondent was convicted of driving while intoxicated. He was ordered to pay a fine and to participate in a group treatment center, but his license was not suspended.

Sec. 343.305(1), Stats., of the implied consent statute states as follows:

"(1) Any person who drives or operates a motor vehicle upon the public highways of this state, or in those areas enumerated in s. 346.61, shall be deemed to have given consent to a chemical test of his breath, blood or urine, for the purpose of determining the alcoholic content of his blood if arrested and issued a citation for driving or operating a motor vehicle while under the influence of an intoxicant in violation of s. 346.63(1)(a) or a local ordinance which is in conformity there-

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

with. The test shall be administered upon the request of a traffic officer. The law enforcement agency by which the officer is employed shall be prepared to administer 2 of the aforesaid 3 tests and may designate which of the aforesaid tests shall be administered. The blood test shall not be the first test administered by the agency. A person who is unconscious or otherwise incapacitated is presumed not to have withdrawn his consent under this subsection."

Any driver who unreasonably refuses to submit to a designated test given in compliance with the statute will lose his driving privileges for sixty days.[1] Sec. 343.305 (2) (a) 2.

The respondent's first contention is that the phrase "and [the agency] may designate which of the aforesaid tests shall be administered" is ambiguous because it can be read to require the agency to designate either one or both of the two tests that the agency must be prepared to give. He argues that the statute must be strictly construed to require the designation of both tests. Since the court did not find that the Police Department offered the respondent both tests, he argues that the Department did not comply with the statute and therefore that he reasonably refused the request to submit to the breath test.

Although sec. 343.305 (1), Stats., considered in isolation, can be construed to require the agency to designate two tests so that the driver can select which of the two to take, that construction is contrary to the language of the statute taken as a whole. Subsection (4) gives the driver the option of having an alternate test of his choice

[1] In addition to the mandatory sixty-day suspension, sec. 343.30 (1q), Stats., states that a person convicted for the first time of driving while intoxicated who also unreasonably refuses to take the designated chemical test shall have his operating privilege revoked for not less than one year.

once he has submitted to a chemical test administered at the request of the officer. Similarly, subsection (2) (a)4 requires the agency to inform the driver that in addition to *"the* test designated by the . . . agency under sub. (1), he may have an additional test as provided in sub. (4)." (Emphasis added.) These two subsections suggest that under subsection (1) the agency may designate one test and that the driver must take that test or risk suspension of his license unless his refusal is otherwise reasonable. Only if he submits to the designated test may he have an alternate test and still comply with the law.[2]

The respondent contends that, unless an agency is required to offer two tests, the requirement that the agency be prepared to administer two tests is pointless. This contention is without merit. By allowing the agency to designate the first test, but to be prepared to administer an additional test, the legislature has insured that even an indigent driver who complies with the law can have the benefit of a second test regarding the degree of his intoxication. Though nothing in the implied consent law prohibits the agency from designating both tests and giving the driver the choice of either one, the statute does not require it to do so.[3]

---

[2] That the agency may designate one test which the driver must take is more clear under the amended version of sub. (1). That version states: "The law enforcement agency by which the officer is employed shall be prepared to administer, either at its agency or any other agency or facility, 2 of the 3 tests under sub. (2)(b), *and may designate which of the tests shall be administered first."* (Emphasis added.) *See:* Ch. 193, sec. 7, Laws of 1977.

[3] The Minnesota court, for example, has encouraged state law enforcement agencies to offer a driver both alternatives, though it has emphasized under the Minnesota statute the failure to do so does not bar revocation. *State v. Boland,* 217 N.W.2d 491 (Minn. 1974).

Contrary to what the respondent claims, the Police Department's designation of the breath test complied with the law, and the respondent's refusal on the ground that he was not given the choice of two tests is not reasonable.

The trial court concluded that the respondent's experience with the breath test during twenty-five years as a judge and district attorney gave him a reasonable basis for refusing to take the designated test. Sec. 343.305(7)(c), Stats., provides that driving privileges will be suspended only if the driver was informed of his rights under the implied consent law and only if his refusal is unreasonable.[4]

The purpose of the implied consent law is to facilitate the taking of tests for intoxication. *Scales v. State,* 64 Wis.2d 485, 219 N.W.2d 286 (1974).[5] It must be liberally construed in light of its purpose to effectuate its policies. *Id.* Thus far this court has considered whether a refusal to take a breath test is reasonable in only one case, *State v. Bunders,* 68 Wis.2d 129, 227 N.W.2d 727 (1975). There the court held that the arresting officer's failure to give *Miranda* warnings will not excuse a refusal to take a designated chemical test.

---

[4] Recently, this subsection was substantially amended, and the requirement that the refusal be unreasonable before suspension can occur was deleted from the law effective July 1, 1978. Chapter 198, Laws of 1977. Thus this court's determination of whether the respondent's refusal was reasonable will have little precedential value in driving while under the influence of an intoxicant cases arising after that date.

[5] The Michigan court has stated that the immediate purpose of the Michigan implied consent law is to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated. The long-range purpose is to prevent intoxicated persons from driving on the highways. *Collins v. Secretary of State,* 187 N.W.2d 423 (Mich. 1971).

However, several other states have enacted implied consent laws similar to ours, and cases involving these statutes can provide some guidance for the court's construction of that requirement in Wisconsin. A person can reasonably refuse to take a breath test if it is medically inadvisible to take the test. *See, e.g., Burson v. Collier,* 175 S.E.2d 660 (Ga. 1970), and *Department of Public Safety v. Orr,* 177 S.E.2d 164 (Ga. 1970), cases in which the court allowed persons with emphysema to refuse a breath test. *Compare: Pfeffer v. Department of Public Safety,* 221 S.E.2d 658 (Ga. 1975), in which the court held that a person with a sore throat and swollen lymph glands could not refuse a breath test, even though his physician advised him to breathe through his nose as much as possible to alleviate throat irritation. The Minnesota court has held that a refusal to submit to a test based on advice given by counsel is reasonable if the police either misled the driver into believing that a refusal for this reason was reasonable or made no attempt to explain to a confused driver that regardless of what his lawyer said he must permit testing or lose his license. *State Department of Public Safety v. Lauzon,* 224 N.W.2d 156 (1974). In *Hall v. Secretary of State,* 231 N.W.2d 396 (Mich. 1975), the court held that an arbitrary refusal of the arresting officer to permit the driver to make a phone call was coercive and justified the driver in refusing to comply with the order to submit to a chemical test.

In *Elliott v. Dorius,* 557 P.2d 759 (Utah 1976), the court was faced with the same contention made by the respondent here. It is also significant that the Utah implied consent statute there construed is very similar to ours.[6] In *Elliott* a driver claimed that his refusal

---

[6] Utah Code Ann. sec. 41-6-44.10(a) (1970) stated as follows:

"Any person operating a motor vehicle in this state shall be deemed to have given his consent to a chemical test of his breath or blood for the purpose of determining the alcoholic content of his blood, provided that such test is administered at the direction

to take the designated breath test was reasonable because he considered the breath test to be unreliable. The court in *Elliott* emphatically rejected that claim: "A stated preference for another chemical test is not a reasonable cause for refusal of a requested test. . . . A person may not unilaterally determine one of the tests designated in subsection (a) of 41–6–44.10 to be unreliable; then, on that alone, claim his refusal to submit to such test was with reasonable cause." The court further held: "Plaintiff claims the selection, [of the breath test] by the police officer, denied him a reliable test. Such is without merit. *A chemical test specified by statute may not be deemed unreliable as a matter of law.* The statute specifically designates the arresting officer as the one to determine the test to be administered. *Furthermore, plaintiff had an opportunity to contact his own physician to exercise the right granted to him in subsection (g), if he were concerned in good*

---

of a peace officer having reasonable grounds to believe such person to have been driving in an intoxicated condition. The arresting officer shall determine within reason which of the aforesaid tests shall be administered."

Subsection (c) stated in part:

"Within twenty days after receiving an affidavit from the arresting officer to the effect that such person has refused a chemical test the department shall notify such person of a hearing before the department. If at said hearing the department determines that the person was granted the right to submit to a chemical test and without reasonable cause refused to submit to such test, or if such person fails to appear before the department as required in the notice, the department shall revoke for one year his license or permit to drive."

Subsection (g) stated:

"The person tested shall be permitted to have a physician of his own choosing administer a chemical test in addition to the one administered at the direction of the peace officer."

The Utah implied consent statute has since been amended and no longer permits a refusal for reasonable cause. Ch. 268, sec. 4, 1977 Utah Laws.

*faith about the reliability of the breath test."* (Emphasis added.) 557 P.2d at 762.

We consider the Utah court's reasoning persuasive. As the City points out, in *State v. Trailer Service, Inc.,* 61 Wis.2d 400, 212 N.W.2d 683 (1973), we held that a recognized method for testing which is expressly authorized by statute is entitled to a prima facie presumption of accuracy:

"A scientific or medical method not recognized as acceptable in the scientific or medical discipline as accurate does not enjoy the presumption of accuracy, *i.e.,* lie-detector tests. *See* cases cited at Anno. (1952), *Physiological or Psychological Truth and Deception Tests,* 23 A.L.R.2d 1306, 1308, sec. 2; *State v. Bohner* (1933), 210 Wis. 651, 246 N.W. 314; *LeFevre v. State* (1943), 242 Wis. 416, 8 N.W.2d 288; *State v. Perlin* (1955), 268 Wis. 529, 68 N.W.2d 32. But tests by recognized methods need not be proved for reliability in every case of violation. Examples, speedometer, breathalyzer, radar. *See* cases cited at Anno. (1973), *Speeding—Proof —Radar,* 47 A.L.R.3d 822, 831, sec. 3; *see also:* Anno. (1967), *Intoxication—Tests—Statutes,* 16 A.L.R.3d 748; 46 A.L.R.2d 1176; 127 A.L.R. 1513; 7 Am. Jur.2d, *Automobiles and Highway Traffic,* p. 878, sec. 334. These methods of measurement carry a prima facie presumption of accuracy. Whether the test was properly conducted or the instruments used were in good working order is a matter of defense." 61 Wis.2d at 408.

Thus in *Trailer,* we implicitly held what is explicit in *Elliott,* that a chemical test specified by a statute may not be deemed unreliable as a matter of law. We make that holding explicit now.

The respondent's experience with breathalyzers may have given him reason to doubt the accuracy of the results, but the question before the trial court was not whether the respondent had a reasonable basis for his personal doubts about the breath test. The question

was whether a personal belief in the unreliability of the breathalyzer is a legally sufficient basis upon which to decline to take the designated test. When the question is thus properly framed, the answer is obvious. The legislature has authorized the use of three tests, including the breath test. The legislature has given law enforcement agencies the choice of which of the three to designate as the test that the driver must take first. The legislature has also stated that the designated test may not be the blood test. To permit the respondent to refuse the designated test, even on an informed opinion that the breath test is unreliable, would render the statute meaningless. Law enforcement agencies could never designate the breath test because all drivers could refuse it with impunity on the authority of the respondent. If a driver has a good faith doubt about the reliability of the breath test, he can simply exercise his option to have a blood test performed at his own expense.

The respondent argues that even if we find the respondent's refusal unreasonable, the order dismissing the report of the respondent's refusal to submit to the designated test should nonetheless be affirmed because the City had no legal authority to prosecute the case. Though an Assistant City Attorney prosecuted the case at the hearing below, the respondent raises this issue for the first time on appeal.

Sec. 349.03(2), Stats., provides that "No local authority may enact or enforce any traffic regulation providing for suspension or revocation of motor vehicle operator's licenses" except in some specified circumstances not present here. The respondent argues that this statute prohibits the City from enforcing the sixty-day suspension penalty for an unreasonable refusal to take a designated chemical test.

Sec. 349.03, Stats., is entitled "Regulation by local authorities forbidden; exceptions." This title, as well

as a reading of sec. 349.03 as a whole,[7] shows that sec. 349.03 is intended to restrict the enactment and enforcement of *local* traffic regulations and that it does not purport to deal with the enforcement of state traffic regulations. We hold that sec. 349.03 has no bearing on the question of whether the City is authorized to prosecute a refusal to take a designated chemical test.

A hearing to determine the reasonableness of a refusal is a proceeding separate and distinct from the prosecution for operating a motor vehicle while intoxicated brought under sec. 346.63(1)(a) or a municipal ordinance in strict conformity therewith. *State v. Jakubowski,* 61 Wis.2d 220, 212 N.W.2d 155 (1973). The implied

---

[7] "349.03 **Regulation by local authorities forbidden; exceptions.** (1) Chapters 341 to 348 and 350 shall be uniform in operation throughout the state. No local authority may enact or enforce any traffic regulation unless such regulation:

"(a) Is not contrary to or inconsistent with chs. 341 to 348 and 350; or

"(b) Is expressly authorized by ss. 349.06 to 349.25 or some other provision of the statutes.

"(2) No local authority may enact or enforce any traffic regulation providing for suspension or revocation of motor vehicle operator's licenses or requiring local registration of vehicles, except as authorized by s. 341.35, or in any manner excluding or prohibiting any motor vehicle, mobile home, trailer or semi-trailer whose owner has complied with chs. 341 to 348 from the free use of all highways, except as authorized by sub. (3) and ss. 66.046, 349.17, 349.22 and 349.23.

"(3) In a county having a population of at least 500,000, city councils and village boards may, as to streets within their corporate limits, and the county board may, as to all other highways, establish one-way lanes to be used only by specified public transportation vehicles but only to facilitate mass transit and taxicab movement. The authority granted by this subsection may be exercised extraterritorially by the county board of the populous county on those portions of county trunk and state trunk highways in contiguous counties which are within 2 miles of the populous county if the highways so affected are connected to highways similarly affected in the populous county and if the board of the contiguous county concurs."

consent statute itself does not specify which governmental subdivision should prosecute an unreasonable refusal to take a designated test.[8]

However, other state statutes show that the district attorney and not the city attorney is the proper party to prosecute this proceeding. Sec. 343.02, Stats., states "The division shall administer and *enforce* ch. 343" (emphasis added), of which the implied consent statute is a part. This provision suggests that proceedings for refusals to submit to a chemical test are matters to be prosecuted by the state. Sec. 59.47(1), Stats., provides that the district attorney shall "[p]rosecute or defend all actions, applications or motions, civil or criminal, in the courts of his county in which the state or county is interested or a party . . . ." In contrast, under sec. 62.09(12), Stats., a city attorney shall "conduct all the law business in which the city is interested." Though the respondent was arrested for a violation of a local ordinance prohibiting driving while intoxicated, adopting sec. 346.63(1)(a), Stats., the proceeding to determine whether his refusal was reasonable and whether his license would be automatically suspended was brought strictly under sec. 343.305(7)(c), Stats. In such a proceeding, the state is the interested party, and the district attorney should have prosecuted the case. However, this defect in parties does not affect the subject

[8] The new version of the statute does not specify which governmental unit should prosecute refusals to take a designated chemical test either. However, new sec. 343.305(3)(b), Stats., provides: "If the person refuses the request of a law enforcement officer to submit to a test under sub. (2), the officer shall immediately prepare a notice of intent to revoke the person's operating privilege under sub. (9) and give a copy of the notice to the person. *The officer shall promptly submit copies of the notice to the department, the district attorney and the court specified under subd. 4. . . .*" (Emphasis added.)

matter or the personal jurisdiction of the court, and it is of a type which can be waived. *State ex rel. Prentice v. County Court of Milwaukee County,* 70 Wis. 2d 230, 238, 234 N.W.2d 283 (1975). In this case the respondent waived any objection to the City as the prosecuting authority by his failure to raise it below.

*By the Court.*—Order reversed and cause remanded with direction to order the respondent's license suspended for sixty days.