836 P.2d 1264

**Georgia Ann PLUMMER, Individually and as Personal Representative of the Estate of Edward O. Plummer, Deceased, and Blue Cross–Blue Shield of New Mexico, a New Mexico Corporation, Plaintiffs–Appellees,**

v.

**Wilson DEVORE, Jr. and Jameson Devore, Defendants,**

**and**

**550, Inc., d/b/a Turnaround Bar, a New Mexico Corporation, Defendant–Appellant.**

**No. 12122.**

Court of Appeals of New Mexico.

July 7, 1992.

Certiorari Denied Aug. 12, 1992.

Robert F. Rosebrough, Mason, Rosebrough & Isaacson, P.A., Gallup, for plaintiffs-appellees.

Thomas J. Hynes, Hynes, Hale & Thrower, Farmington, for defendant-appellant 550, Inc.

## OPINION

PICKARD, Judge.

Defendant 550, Inc. appeals from a judgment in a wrongful death action holding it liable under the Alcoholic Licensees Liability Act, NMSA 1978, Section 41–11–1 (Repl.Pamp.1986). On appeal, defendant contends that the trial court erred in (1) admitting the results of a breathalyzer test, (2) admitting expert testimony relying on the results of the breathalyzer test, (3) denying defendant's motion for a directed verdict, and (4) denying defendant's motion for a new trial. We reverse based on the first two issues.

Wilson Devore, Jr. (Devore) and his brother traveled from Crownpoint to Farmington on August 29, 1986, to do some shopping. Around midnight, they stopped at the Turnaround Bar. Devore stated that they engaged in private conversation until the bar closed at 2:00 a.m., and that during that time, he drank three or four beers. After the bar closed, Devore and his brother lingered in the parking lot for half an hour; made a brief stop at a gas station for fuel, coffee, and food; and headed back to Crownpoint. At 5:45 a.m., Devore's vehicle crossed the highway centerline fifty-eight miles south of Farming-ton and hit Edward Plummer's vehicle head-on. Plummer died from his injuries six weeks later. Devore admitted to falling asleep at the wheel, but denied passing out from intoxication. He maintained on both direct and cross-examination that he had only had three or four beers at the bar, and that he did not drink before arriving or after leaving the bar. When asked by plaintiffs' counsel whether he might have consumed more than four beers, however, Devore stated, "I can't answer that."

At 7:35 a.m. on the morning of the accident, Navajo Police Sergeant Daniel Johns administered a breathalyzer test to Devore, noting that Devore smelled like alcohol, had bloodshot eyes, and was excited. One test was administered, using an Intoxilyzer 5000 machine. The result of the test showed that Devore had a blood alcohol level of 0.07 percent. Based on this result, plaintiffs' expert witness, Dr. Douglas Ferraro, performed certain calculations and testified that Devore must have had a blood alcohol level of 0.10 percent at the time of the accident, and 0.155 percent when he left the bar. According to Ferraro, Devore would have had to have consumed ten beers in the two hours he was at the bar to reach that level of intoxication.

Defendant objected to the testimony of both Johns and Ferraro. Defendant first objected to the fact that Johns had been certified to administer breathalyzer tests in Arizona, but not in New Mexico. Additionally, defendant objected to Johns' discussing Devore's breathalyzer test result based on Johns' testimony that the breathalyzer machine had not been calibrated for five months at the time he tested Devore, and Johns' admission that breathalyzer machines must be calibrated on a weekly or monthly basis to be accurate. Defendant similarly objected to Ferraro's evidence due to the fact that Ferraro's calculations were all based on the 0.07 percent test result; that Ferraro admitted that if the result itself was inaccurate, all his conclusions would be wrong; and that Ferraro acknowledged that if an Intoxilyzer 5000 machine was not calibrated for five months, there would be a "question" about the va-

lidity of its test reading. The trial court overruled all of the objections, indicating that they went to the weight rather than the admissibility of the evidence.

The jury found that defendant was negligent in serving liquor to Devore, and further found that this negligence was a proximate cause of Plummer's death. The jury awarded plaintiffs $1,253,000, specifying that defendant was seventy percent negligent and that Devore was thirty percent negligent.

■ Because they are related, we address defendant's first two points of error together. To the extent that defendant continues to press the issue of Johns' lack of New Mexico certification, the matter has been resolved unfavorably to defendant by *State v. Eden,* 108 N.M. 737, 743, 779 P.2d 114, 120 (Ct.App.1989), and *State v. Watkins,* 104 N.M. 561, 564, 724 P.2d 769, 772 (Ct.App.1986), which make clear that certification is a factor which goes to the weight, rather than the admissibility, of the evidence. However, defendant's other contentions concerning the inadmissibility of the test results, based on their invalidity, deserve more attention.

Defendant argues that because there was no showing of the validity of the test results, they were inadmissible in this case. Defendant points to Johns' testimony that the machine had not been calibrated in the five months preceding the accident, coupled with his admission that such machines must be calibrated on a weekly or monthly basis, at least, to remain accurate. He also points to Ferraro's concurrence in Johns' opinion regarding calibration and validity. Relying on *Watkins* and cases from other states, plaintiffs respond that defendant is merely attacking the weight and credibility of the evidence, which are matters for the trier of fact to resolve.

We believe this issue is answered by our own cases and do not address the out-of-state authority, which we do not find persuasive in any case. Plaintiffs' reliance on *Watkins* is misplaced. There was evidence in *Watkins* showing that the particular machine used had been calibrated both shortly before and after Watkins was tested, and

was found to have a variation rate of only 0.01 percent. *Id.* at 564, 724 P.2d at 772. Two witnesses in that case testified that the machine was functioning properly and that standard procedure was followed in giving the test. *Id.* Watkins' complaints involved, at most, a conflict in the evidence. In contrast, in this case, the complaint is of a total failure to show the validity of the test.

■ The fact that *Eden* and *Watkins* characterized the challenges before this court as matters of weight rather than admissibility, which were easily resolved on appeal, does not mean that the admissibility of breath test evidence is a given in every case. Notwithstanding the high degree of accuracy attributed to breath tests, *State v. Bearly,* 112 N.M. 50, 54, 811 P.2d 83, 87 (Ct.App.1991), we hold that upon proper objection, there must be a threshold showing of the machine's validity as foundation for admission of the evidence. *Cf. State v. Dorsey,* 88 N.M. 184, 539 P.2d 204 (1975) (prerequisite to admission of polygraph evidence is showing of validity of test made on subject); *State ex rel. Human Servs. Dep't v. Coleman,* 104 N.M. 500, 504, 723 P.2d 971, 975 (Ct.App.1986) (foundation requirements for admission of serologic testing in paternity proceedings includes evidence of the validity of tests made on the subject); *State v. Henderson,* 100 N.M. 260, 262, 669 P.2d 736, 738 (Ct. App.1983) (admission of "automated teller" photos under "silent witness" theory upheld where foundation evidence included testimony concerning film developing procedure); *Simon Neustadt Family Ctr., Inc. v. Bludworth,* 97 N.M. 500, 506, 641 P.2d 531, 537 (Ct.App.1982) (foundation required for admission of Psychological Stress Evaluation includes evidence to establish that the PSE instrument was functioning properly at the time of the test and that there was adherence to proper procedures), *overruled on other grounds by Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 749 P.2d 1105, *cert. denied,* 488 U.S. 822, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988). In the words of the applicable evidence rule, there must be "ev-

idence sufficient to support a finding" that the particular test was capable of producing valid results. *See* SCRA 1986, 11–104(B). There was this sort of evidence in *Watkins.*

We agree with defendant, however, that plaintiffs did not produce the necessary foundation for admission of the breathalyzer test result in this case. There was no showing whatsoever that the machine was properly calibrated or that it was functioning properly at the time of the test. Indeed, all the evidence was to the contrary. Admission of the test results through Johns' testimony was therefore error. *See, e.g., Simon Neustadt Family Ctr., Inc. v. Bludworth; cf. State v. Watkins* (evidence was sufficient to support a finding of validity). This being so, it necessarily follows that the admission of Ferraro's testimony, which was based on the test result, was also error. *Cf. State v. Bell*, 90 N.M. 134, 138–39, 560 P.2d 925, 929–30 (1977) (expert testimony properly excluded as irrelevant when based on "inconclusive" polygraph test results); *State ex rel. Human Servs. Dep't v. Coleman*, 104 N.M. at 503, 723 P.2d at 974 (prerequisite to eliciting scientific opinion testimony is showing that witness has sufficient facts upon which to accurately formulate an opinion).

■ There was little, if any, other evidence of Devore's intoxication. For this reason, we cannot say that the error, even if corrected, would not change the result. *See Sheraden v. Black*, 107 N.M. 76, 80, 752 P.2d 791, 795 (Ct.App.1988) ("function of reviewing court * * * is to correct erroneous results, not to correct errors that, even if corrected, would not change the result"). Accordingly, we reverse the judgment on this basis.

Defendant's last two points of error involve challenges to the sufficiency of the evidence and the excessiveness of the jury's determination of liability and damages, presented below by defendant's motions for directed verdict and new trial. We affirm on the directed verdict issue and, because we are granting a new trial based on the first two issues, we do not discuss the last issue.

■ A directed verdict is proper only when the jury could not reasonably and legally reach any other conclusion, given the facts and circumstances of the case before it. *See State Farm Fire & Casualty Co. v. Price*, 101 N.M. 438, 684 P.2d 524 (Ct.App.1984). In reviewing a motion for a directed verdict, this court must review all the evidence, and if there are conflicts and contradictions in the evidence, they must be resolved in favor of the party resisting the motion. *Melnick v. State Farm Mut. Auto Ins. Co.*, 106 N.M. at 728–29, 749 P.2d at 1107–8 (citing *Skyhook Corp. v. Jasper*, 90 N.M. 143, 146, 560 P.2d 934, 937 (1977), *overruled on other grounds by Klopp v. Wackenhut Corp.*, 113 N.M. 153, 824 P.2d 293 (1992)). In reviewing the evidence in this case, we consider the breathalyzer test evidence which we have held was inadmissible. *See Townsend v. United States Rubber Co.*, 74 N.M. 206, 392 P.2d 404 (1964); *cf. State v. Post*, 109 N.M. 177, 181, 783 P.2d 487, 491 (Ct.App.1989) (in determining sufficiency of evidence in criminal cases, all evidence, including that wrongfully admitted, is reviewed, and if evidence is sufficient, retrial is not barred).

In reviewing the evidence, because *Townsend* counsels us to consider all evidence, we may assume that the machine was functioning properly and that standard procedure was followed in giving the test. In addition, the only objections to reliability raised on appeal and found to have merit concerned the foundational requirements of proper functioning and standard procedures. Thus, we do not address other issues that may generally bear on the reliability of the evidence. Finally, we have not discussed questions of statutory construction or other issues we have not perceived to be raised on appeal. Under the circumstances, we need not decide whether settled rules in other jurisdictions would be persuasive here. *See generally Purchase v. Meyer*, 108 Wash.2d 220, 737 P.2d 661, 665 (1987) (en banc) (blood alcohol evidence is not "competent" evidence against the liquor seller because "a person's sobriety must be judged by the way she appeared to those around her, not by what a blood alcohol test may subsequently reveal").

Under the instructions given in this case, plaintiff had to show that (1) defendant sold or served alcohol to Devore, (2) it was reasonably apparent that Devore was intoxicated, and (3) defendant knew from the circumstances that Devore was intoxicated. Section 41–11–1(A). "Intoxicated" means a physical or mental impairment resulting from alcohol that substantially diminishes the ability to think and act as an ordinary prudent person would under the circumstances. Section 41–11–1(D)(2).

Based on the result of the breathalyzer test, Ferraro's expert testimony, Devore's testimony concerning the length of time spent at the bar and the absence of any other drinking, and the testimony of the owner/operator of the Turnaround Bar, we hold that the trial court properly denied the motion for a directed verdict. Although Devore testified that he only had three or four beers at the bar, the factfinder was free to disregard this testimony. *See State v. Vigil*, 87 N.M. 345, 533 P.2d 578 (1975) (jury may disregard a particular version of events). Similarly, the jury was free to believe only part of Devore's testimony and to resolve conflicts between portions of his testimony and Ferraro's expert testimony. *See Melnick v. State Farm Mut. Auto. Ins. Co.* Ferraro's testimony was that Devore consumed ten beers in two hours. Defendant's operator's testimony was that he knew that this pace of consumption would result in intoxication and make it reasonably apparent to defendant that Devore was intoxicated at the time he was last served. Based on this, a jury could reasonably find for plaintiffs in this case. *See* § 41–11–1(A).

Indeed, the owner of the Turnaround Bar conceded the reasonableness of drawing such an inference from that pace of consumption. He testified that he had worked in bars all his life, that he knew that 0.10 percent is the legal presumption for intoxication, and that he was at the bar from 8:00 p.m. until 2:00 a.m. on August 29 and 30, 1986, as the operator of the bar. According to the owner, the waitresses at the bar have specific "stations," and stay in those stations all night long, serving the same people at the same tables. He acknowledged that it would have been possible for a patron to drink ten beers in two hours at the bar. He also testified that the bar had, at one point, a chart which established blood alcohol levels based on weight and number of drinks per hour. He admitted that if a man of Devore's weight was served five beers in an hour, the intoxicating effects of the alcohol would be noticeable to both the bartender and the waitress. He also admitted that if someone was served ten beers in two hours or two and a half hours, he would know from the circumstances of having served that many drinks that the patron was intoxicated.

This evidence substantially supports the jury's findings for plaintiff on each of the three required elements. The owner's testimony supports the conclusion that defendant served Devore alcohol knowing he was intoxicated. Based on the owner's testimony, the jury was also entitled to infer that only one waitress served Devore, that she knew or should have known what the owner knew regarding Devore's consumption, and that therefore it was reasonably apparent that Devore was intoxicated. Moreover, the jury was free to conclude that a breach of defendant's duty not to serve an intoxicated individual was the proximate cause of the accident. *See* § 41–11–1(G)(2). Although Devore testified that he fell asleep while driving as opposed to passing out from alcohol consumption, the jury could reasonably infer that Devore lost consciousness as a result of intoxication, regardless of whether he fell asleep or passed out. The proximate cause requirement is further supported by Ferraro's testimony that Devore had a 0.10 percent blood alcohol level at the time of the accident.

Although the evidence was sufficient to support the jury's verdict, the judgment is reversed because evidence of the breathalyzer test result and expert testimony based on it were erroneously admitted.

IT IS SO ORDERED.

MINZNER and FLORES, JJ., concur.