897 P.2d 216

Albert R. FUGERE, Petitioner–Appellant,

v.

STATE of New Mexico, TAXATION AND REVENUE DEPARTMENT, MOTOR VEHICLE DIVISION, Respondent–Appellee.

No. 15649.

Court of Appeals of New Mexico.

April 6, 1995.

Certiorari Denied May 31, 1995.

Dan Cron, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, Santa Fe, for petitioner-appellant.

Tom Udall, Atty. Gen., Judith Mellow, Sp. Asst. Atty. Gen., DWI Legal Section, Santa Fe, for respondent-appellee.

## OPINION

FLORES, Judge.

The opinion filed February 28, 1995 is withdrawn and the following substituted therefor.

Albert R. Fugere appeals from an order of the district court affirming the decision of the Motor Vehicle Division of the Taxation

and Revenue Department (MVD) revoking his driver's license for one year for refusing to submit to a breath test under the New Mexico Implied Consent Act, NMSA 1978, §§ 66–8–105 to –112 (Repl.Pamp. 1987 & Cum.Supp.1993) (the Act). We consolidate Fugere's issues on appeal and address them as follows: (1) whether Fugere's actions constituted a refusal to take a breath test and, if so, whether Fugere cured that refusal with a subsequent consent; (2) whether Fugere's due process rights were violated; and (3) whether the hearing officer acted arbitrarily and capriciously in revoking Fugere's driver's license. We affirm.

Before turning to the facts of the appeal, we first address Fugere's motion to strike certain exhibits, and any reference to them, which he contends were introduced as evidence for the first time on appeal. Fugere filed a motion to strike in response to the MVD's alleged improper attempt to supplement the record. The motion was held in abeyance pending submission of the case to a panel. Specifically, Fugere contends that a document from the Scientific Laboratory Division and a portion of the Driving While Intoxicated Prosecutor's Manual referred to by the MVD in its answer brief should be stricken because they were not introduced into evidence during any prior proceedings. *See Baca v. Swift & Co.,* 74 N.M. 211, 215, 392 P.2d 407, 411 (1964). After reviewing the record of the administrative hearing, we grant Fugere's motion and strike the exhibits. We note that neither of the exhibits referred to were relied upon by this Court in deciding this case on appeal. *See State ex rel. Alleman v. Shoats,* 101 N.M. 512, 517, 684 P.2d 1177, 1182 (Ct.App.1984) (matters not of record will not be considered on appeal).

*FACTS*

The following facts were established at the administrative hearing. On November 28, 1993, Fugere was stopped by Officer Roger Romero of the Santa Fe Police Department. Officer Romero stopped Fugere for failing to maintain his lane, accelerating rapidly, clipping a median, weaving, and nearly causing an accident by failing to yield to an oncoming vehicle. Fugere admitted to drinking three beers. After noticing a strong odor of alcohol on Fugere's breath, his blood-shot watery eyes, and his slurred speech, Officer Romero administered a field sobriety test. Based on the results of the field sobriety test, Officer Romero placed Fugere under arrest for driving while intoxicated. Fugere was then asked to take a breath test to determine his blood-alcohol content. Officer Romero advised Fugere that under the Act, he was required to submit to a breath test and that if he refused to take the test, he could lose his license for a period of one year.

At that point, Fugere refused to take the test on the RBT III Alco–Sensor (RBT) located in Officer Romero's vehicle, but stated that he would agree to take the breath test on the stationary breathalyzer machine located at the police station. Officer Romero advised Fugere that Fugere could not select what test was to be administered, but that if he took the RBT test, he could take any additional tests thereafter, if he chose to do so. Fugere was offered the breath test on the RBT several times but he continually responded that he wanted to take the test on the machine at the police station because he did not trust the RBT. Shortly thereafter, Officer Romero transported Fugere to the Adult Detention Center and, once again, offered Fugere the test on the RBT. Fugere again refused, stating that he wanted to take the test on the machine at the police station. Determining that Fugere's responses constituted a refusal, Officer Romero proceeded to cite, jail, and process Fugere. Fugere never took a chemical breath test to determine his blood-alcohol content.

Testimony established that the distance from the point where Fugere was stopped to the Adult Detention Center, where Fugere was incarcerated, was about two and a half miles, or approximately five minutes away. Also, Officer Romero testified that the Adult Detention Center and the police station were very close, approximately one minute apart. Officer Romero confirmed that Fugere was under his observation from the time Fugere was stopped to the time he was incarcerated. There was also testimony that there was a stationary breathalyzer machine at the police station and the Adult Detention Center. Of-

ficer Romero testified that he had never used the model at the detention center and was not certified to use it.

At the license revocation hearing, Fugere was qualified as an expert witness in chemical testing for alcohol and physiology for alcohol in the human body. Fugere testified concerning the factual basis for his opinion that the RBT was unreliable for evidentiary purposes. The hearing officer found that: (1) Officer Romero had reasonable grounds to believe that Fugere was driving a motor vehicle under the influence of intoxicating liquor or drugs; (2) Officer Romero arrested Fugere; (3) the hearing was held not later than ninety days after the notice of revocation; and (4) Fugere refused to submit to a chemical test after being advised that failure to do so could result in the revocation of his license for one year. The hearing officer determined that Fugere's experience on the reliability, or lack thereof, of breath test devices was irrelevant because Fugere never took the breath test requested of him.

Fugere's driver's license was revoked for a period of one year. Fugere appealed to the First Judicial District Court which affirmed the license revocation in an Order of Judgment. Fugere appeals that order.

*DISCUSSION*

### I. Applicable Statutes

Fugere was stopped by Officer Romero on November 28, 1993, and we apply the law in effect at that time. The Act was amended in 1993, but the amendments did not become effective until January 1, 1994. We do not decide whether the outcome would be the same under the most recent amendments to the Act. The former and applicable Act provided that "[a]ny person who operates a motor vehicle within this state *shall be deemed to have given consent* ... to chemical tests of his breath or blood, *as determined by a law enforcement officer....*" Section 66–8–107(A) (Repl.Pamp.1987) (emphasis added). "A test of blood or breath *shall be administered at the direction of a law enforcement officer* having reasonable grounds to believe the person to have been driving a motor vehicle within this state while under the influence of intoxicating liquor or drug." Section 66–8–107(B) (empha-

sis added). If the motorist refuses to take the test designated by the officer, then the director of the MVD can revoke the motorist's driver's license for one year. Section 66–8–111(B). The Act further provides that in addition to any test performed at the direction of a law enforcement officer, a person being tested must also be given an opportunity to arrange for a chemical test by any qualified person of his choosing. Section 66–8–109(B).

### II. Standard of Review

 In reviewing the hearing officer's decision to revoke a person's driver's license, the district court determines "only whether reasonable grounds exist for revocation ... of the person's license ... based on the record of the administrative proceeding." Section 66–8–112(G). Reasonable grounds include:

(1) the law enforcement officer must have had reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor; (2) the person must have been under arrest; (3) the person must have refused to submit to a chemical test upon request of the law enforcement officer[;] and (4) the law enforcement officer must have advised that the failure to submit to a test could result in revocation of his privilege to drive.

*State, Dep't. of Transp., Motor Vehicle Div. v. Romero,* 106 N.M. 657, 658–59, 748 P.2d 30, 31–32 (Ct.App.1987) (quoting *State, Dep't. of Motor Vehicles v. Gober,* 85 N.M. 457, 459, 513 P.2d 391, 393 (1973)). The findings made by the hearing officer at the revocation hearing establish that reasonable grounds existed for the revocation of Fugere's driver's license.

 The standard of review for an appeal from an administrative agency is whether there is substantial evidence in the record as a whole to support the agency's decision. *Romero,* 106 N.M. at 659, 748 P.2d at 32. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Rutter & Wilbanks*

*Corp. v. Oil Conservation Comm'n,* 87 N.M. 286, 290, 532 P.2d 582, 586 (1975). The determination of whether Fugere refused "to submit to a breath test is a question of fact, not of law." *Romero,* 106 N.M. at 659, 748 P.2d at 32. Since this is a factual question, the hearing officer's determination that Fugere's acts constituted a refusal may only be overturned if not supported by the record as a whole. *Id.* at 660, 748 P.2d at 33.

### III. Refusal to Take Test

■ Fugere contends that his actions did not constitute a refusal to take a breath test. He argues that by repeatedly requesting a breath test on the machine at the police station, he was not refusing to take a chemical breath test. This argument is without merit. The Act provides that a motorist consents to "chemical tests of his breath or blood, *as determined by a law enforcement officer.*" Section 66–8–107(A) (emphasis added.) To grant Fugere's contention would render this mandatory provision meaningless.

■ Fugere's refusal to take Officer Romero's test, accompanied by his consent to be tested on the machine at the police station, was, at best, a conditional consent. A conditional consent is a refusal to take the test. *See Payne v. Director of Motor Vehicles,* 235 Cal.App.3d 1514, 1 Cal.Rptr.2d 528, 530 (1991) (consent to blood test on the condition that a physician administer it constituted a refusal); *Goerig v. State,* 121 Idaho 26, 822 P.2d 545, 548 (1991) (consent to take a breath test on the condition that handcuffs be removed is refusal); *Schroeder v. State Dep't. of Motor Vehicles & Pub. Safety,* 105 Nev. 179, 772 P.2d 1278, 1279–80 (1989) (per curiam) (consent conditioned on request to speak to attorney before taking a breath test is a refusal); *Skinner v. Motor Vehicles Div.,* 107 Or.App. 529, 812 P.2d 46, 47 (1991) (per curiam) (refusal to take breath test until attorney was present at test was refusal); *Croissant v. Commonwealth,* 114 Pa.Cmwlth. 601, 539 A.2d 492, 495 (1988) (anything less than unqualified assent to take a breath test constitutes a refusal); *Gibbs v. Bechtold,* 180 W.Va. 216, 376 S.E.2d 110, 112 (1988) (where conduct or words manifest reluctance or

qualifies assent to take breath test for reasons unrelated to the procedure of the test, refusal is sufficiently established).

Furthermore, Fugere had the right to request that a test be administered by a number of other qualified individuals of his own choosing, in addition to the test administered by the officer. Section 66–8–109(B). Fugere could have exercised this right and challenged the results of Officer Romero's test thereafter.

■ Fugere further asserts that under *Romero,* the hearing officer and the district court were required to consider Fugere's subjective intent and failure to do so was error. In *Romero,* we noted that we have never decided what constitutes refusal under the Act and observed that according to *Black's Law Dictionary* 1282 (6th ed. 1990), " '[r]efusal' " means " '[t]he declination of a request or demand, or the omission to comply with some requirement of law, as the result of a positive intention to disobey.' " *Romero,* 106 N.M. at 659, 748 P.2d at 32. Here, Officer Romero repeatedly demanded that Fugere comply with the requirement of law that Fugere submit to the test determined by Officer Romero. Fugere declined to do so and thereby exhibited a positive intention to disobey, regardless of any subjective intent.

Additionally, Fugere argues that even if his actions constituted a refusal, he cured it by agreeing to take a breath test on the machine at the police station. Fugere relies on *State v. Suazo,* 117 N.M. 785, 877 P.2d 1088 (1994), which allows a motorist, under certain circumstances, to rescind an initial refusal to take a chemical test with a subsequent consent. In *Suazo,* the defendant was arrested following a two-vehicle accident and was asked to take a breath test. *Id.* at 786, 877 P.2d at 1089. The defendant did not breathe hard enough or long enough to provide an adequate breath sample. *Id.* at 787, 877 P.2d at 1090. Determining that the defendant's actions were willful and amounted to a refusal to take the test, the officer informed the defendant that his license was revoked for one year. *Id.* After requesting to be taken to the hospital for medical treatment, the defendant spoke with his attorney.

*Id.* Thereafter, the defendant agreed to take a blood test and the test was administered three hours and forty-five minutes after the accident. *Id.* The defendant later claimed that he could not give an adequate breath sample because his mouth was injured in the accident. *Id.*

■ In adopting a subsequent consent rule, our Supreme Court established a five-part test. A motorist will be allowed to rescind an initial refusal:

(1) when he does so before the elapse of the reasonable length of time it would take to understand the consequences of his refusal;

(2) when such a test would still be accurate;

(3) when testing equipment or facilities are still readily available;

(4) when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and

(5) when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

*Id.* at 793, 877 P.2d at 1096. After establishing the factors to consider in determining subsequent consent, our Supreme Court concluded "as a matter of law that [the defendant's] change of mind after two hours and fifteen minutes was unreasonable." *Id.* at 794, 877 P.2d at 1097.

Although *Suazo* is somewhat factually similar to this case, we find it distinguishable. Fugere is correct in pointing out that in *Suazo* our Supreme Court did not consider the fact that the defendant agreed to take a test different than the one offered by the arresting officer. Instead, the Court's decision was based on the time period that elapsed between the initial refusal to take the breath test and the time that the blood test was eventually administered. *Id.* Fugere argues that by contrast, the time between his initial refusal and the time that he could have had a breath test administered on the stationary machine at the police station was only a matter of minutes. Nevertheless, unlike Fugere, the defendant in *Suazo* cooper-

ated with the police officer and made three attempts to provide a breath sample. *Id.* at 786–87, 877 P.2d at 1089–90. However, he was unable to do so, presumably due to his injuries, and for that reason he offered to take a blood test instead. *Id.* Fugere, on the other hand, failed to cooperate with Officer Romero's request to take a breath test on the RBT and insisted on taking the test on a machine of his own choosing.

Moreover, the subsequent consent rule recognized in *Suazo* was initially adopted to alleviate the harshness of a bright-line rule that "would rigidly and unreasonably bind an arrested person to his first words spoken, no matter how quickly and under what circumstances those words are withdrawn." *Id.* at 789, 877 P.2d at 1092 (quoting *State v. Moore*, 62 Haw. 301, 614 P.2d 931, 935 (1980)). In adopting the subsequent consent rule, our Supreme Court noted that the test would answer the concerns of both advocates and opponents of a bright-line rule "by offering the flustered motorist a fair chance to understand his or her rights." *Id.* 117 N.M. at 793, 877 P.2d at 1096. Here, Fugere did not fall victim to a rash, unconsidered choice. Instead, he was consciously testing the limits of the law by attempting to choose his own test and in the process delaying the taking of the breath test *requested of him.*

■ We determine that there is substantial evidence in the record as a whole to support the hearing officer's determination that Fugere refused to submit to a breath test. By failing to submit to the breath test requested by Officer Romero, Fugere's actions constituted a refusal under the Act, irrespective of his offer to take the test on the machine at the police station.

■ Accordingly, we hold that under the Act, a motorist cannot refuse to take a chemical test of breath or blood designated by law enforcement and as provided by statute merely because he believes such tests are unreliable. *See In re Ball,* 11 Kan.App.2d 216, 719 P.2d 750 (1986) (refusal to take breath test based on the belief that breathalyzer machine was not working properly was unreasonable); *Elliott v. Dorius,* 557 P.2d 759, 762 (Utah 1976) (motorist's demand for

blood test after being informed that blood test was not available was not reasonable cause for refusal to submit to breath test under the statute); *In re Bardwell*, 83 Wis.2d 891, 266 N.W.2d 618 (1978) (motorist was not entitled to refuse to take a breath test because he believed that the breath machine was unreliable). Thus, in the instant case, the proper way for Fugere to have challenged the reliability of the RBT would have been for him to take the test designated by Officer Romero, to take an additional test of his own choosing, and to thereafter challenge any disparate results.

### IV. Due Process Claim

Fugere argues that his due process rights were violated by Officer Romero's order to submit to an unreliable test, the hearing officer's failure to find that the RBT was unreliable, and the hearing officer's failure to require the State to provide a threshold showing that the RBT was reliable.

Fugere argues that due process "presumes that the chemical test determined by the law enforcement officer must be a reliable test." He further asserts that the mere fact that a police officer chooses a particular test does not mean that the test is reliable. Fugere seems to suggest that he has a due process right to choose the test administered to him if he believes that the test chosen by the police officer is unreliable. This argument is meritless. A motorist cannot choose which test will be administered. The statute specifies that the police officer will determine the test to be given, "a chemical [test, either] of ... breath or blood." Section 66–8–107(A). Moreover, "[a] chemical test specified by statute may not be deemed unreliable as a matter of law." *Elliott*, 557 P.2d at 762; *Bardwell*, 266 N.W.2d at 622.

Fugere further argues that his due process right to refuse to take a breath test he believes is unreliable is analogous to the right to self-defense against a police officer. A person has a right to self-defense against a police officer when excessive force is used to effect an arrest. *State v. Gonzales*, 97 N.M. 607, 610, 642 P.2d 210, 213 (Ct.App.1982); *State v. Kraul*, 90 N.M. 314,

318–19, 563 P.2d 108, 112–13 (Ct.App.), *cert. denied*, 90 N.M. 637, 567 P.2d 486 (1977). The right exists whether the arrest is lawful or unlawful. *Kraul*, 90 N.M. at 318–19, 563 P.2d at 112–13. Fugere infers that because "[l]egal precedent exists to allow citizens to disregard unreasonable actions by the police," he has a due process right to refuse to submit to a chemical test that is unreliable.

Fugere's contention is misplaced. Although one has a right to self-defense against the use of excessive force by a police officer making an arrest, one must still submit to the arrest. Legal challenges to the arrest can then be raised by following the appropriate legal processes. *See State v. Doe*, 92 N.M. 100, 102–03, 583 P.2d 464, 466–67 (1978) (holding that one cannot use force to resist a search by a police officer in the performance of his duties whether or not the arrest is illegal but should submit peaceably and seek legal recourse). It logically follows that a motorist arrested for driving while intoxicated must take the test designated by law enforcement, and as provided by statute. If a motorist wants to then challenge the reliability of the chemical test taken, he or she can do so at the revocation hearing. To rule otherwise would substantially interfere with a police officer's ability to enforce the Act.

Contrary to what Fugere suggests, due process does not require a hearing on the reliability of the breath test to be conducted in the field. There is no such requirement of immediacy. Due process merely requires a hearing within a reasonable time. *State v. Chavez*, 102 N.M. 279, 281, 694 P.2d 927, 929 (Ct.App.1985) (revocation hearing must be held within reasonable time after probationer is taken into custody).

Generally, where there is a claim of denial of due process, there must be a showing of prejudice. *Deats v. State*, 80 N.M. 77, 80, 451 P.2d 981, 984 (1969). Here, Fugere has failed to show that he would have suffered any prejudice by taking the RBT test and later challenging its reliability. If anything, Fugere's argument that the RBT is unreliable would have been strengthened had he taken the test on the RBT, and then been

able to demonstrate a different result on the stationary breathalyzer at the police station.

Fugere further argues that his unchallenged, uncontradicted testimony concerning the RBT established a prima facie case that the RBT was unreliable. Citing *Duke City Lumber Co. v. New Mexico Environmental Improvement Board,* 95 N.M. 401, 403, 622 P.2d 709, 711 (Ct.App.1980), *cert. denied,* 95 N.M. 426, 622 P.2d 1046 (1981), he claims that the prima facie showing shifted the burden to the State to prove the RBT's reliability. Fugere asserts that absent such proof, the hearing officer was required to find that the RBT was unreliable. Instead, the hearing officer considered the reliability of the RBT to be irrelevant.

Just as the hearing officer considered the RBT's reliability to be irrelevant, we too determine that Fugere's expert opinion regarding the RBT's reliability is irrelevant because Fugere never took the RBT breath test. Fugere was under an obligation to take the breath test designated by Officer Romero. Section 68–8–107. As earlier stated, under the Act, citizens do not have the right to choose the test they will take. The test that will be administered is designated by law enforcement, as provided by statute. *See* §§ 66–8–107, –109(B). There was testimony at the revocation hearing that the RBT is an approved breath testing device under the regulations of the Scientific Laboratory division. Had Fugere taken the RBT test, the outcome may have been different. In that situation, Fugere could have challenged the RBT's reliability. Only then would the reliability of the RBT be relevant.

Additionally, Fugere asserts that because there was proper objection to the accuracy of the RBT breath test, the hearing officer had to require a threshold showing of the RBT's validity. *See Plummer v. Devore,* 114 N.M. 243, 245, 836 P.2d 1264, 1266 (Ct.App.) (upon proper objection, there must be threshold showing of validity of breath test results as foundation for admission of evidence), *cert. denied,* 114 N.M. 82, 835 P.2d 80 (1992). However, *Plummer* is distinguishable because the defendant in that case, unlike Fugere, took the designated test and challenged the validity of the results because of testimony that the machine had not been calibrated for five months at the time the defendant took the test. *Id.* at 244–45, 836 P.2d at 1265–66. In this case, Fugere never submitted to the breath test requested of him, so there are no results to challenge. Consequently, we reject Fugere's argument.

■ Therefore, just as in the context of a probation revocation hearing, a motorist wishing to challenge the reliability of a breath or blood test or the accuracy of the results of such tests must do so at the license revocation hearing within the reasonable ninety-day time period prescribed under Section 66–8–112(F). A challenge may only be made after a motorist has taken the test designated by law enforcement.

## V. Arbitrary and Capricious Action by Hearing Officer

■ The final issue raised on appeal is whether the decision of the hearing officer to revoke Fugere's license is arbitrary and capricious.

> An abuse of discretion is established if the agency or lower court has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence. An abuse of discretion will also be found when the decision is contrary to logic and reason.
>
> On appeal, the role of an appellate court in determining whether an administrative agency has abused its discretion by acting in an arbitrary and capricious manner, is to review the record to determine whether there has been unreasoned action without proper consideration in disregard for the facts and circumstances.

*Perkins v. Department of Human Servs.,* 106 N.M. 651, 655, 748 P.2d 24, 28 (Ct.App.1987) (citations omitted.)

As discussed above, the hearing officer did not exceed its statutory authority nor violate its rules when it revoked Fugere's driver's license for one year. Nor did the hearing officer deprive Fugere of his due process rights. Finally, the findings of the hearing officer are supported by the evidence and the decision is supported by the findings. Ac-

cordingly, we hold that the hearing officer's decision is not arbitrary or capricious.

*CONCLUSION*

For the foregoing reasons, we affirm the district court's Order and Judgment affirming the revocation of Fugere's driver's license for one year.

**IT IS SO ORDERED.**

PICKARD and BLACK, JJ., concur.