216

(719 P.2d 750)
No. 58,175

In the Matter of the Appeal of RONALD C. BALL from the order of the Kansas Department of Revenue.

Opinion filed March 27, 1986.

*Michael V. Foust*, of Foust & Vignery, of Goodland, for the appellant.

*Ann Smith* and *Kris E. McKinney*, legal services, and *William L. Edds*, general counsel, Department of Revenue, for the appellee.

Before BRISCOE, P.J., RALPH M. KING, JR., District Judge, assigned, and DAVID S. KNUDSON, District Judge, assigned.

BRISCOE, J.: Ronald C. Ball was arrested for driving while under the influence of alcohol. He refused to submit to a breath test. The Kansas Department of Revenue determined Ball's refusal was unreasonable and suspended his driver's license pursuant to K.S.A. 8-1001(c). Ball appeals the district court's affirmance of the suspension.

After his arrest, Ball was taken to the Sherman County Sheriff's office by a highway patrol trooper. When the breathalyzer machine was plugged in, Ball saw a light on the machine flashing on and off erratically. Ball told the trooper about the light and expressed some concern that the machine was not working properly. The trooper believed the problem was in the electrical outlet, not the machine, and plugged the machine into a different outlet. Following this change, the machine's function appeared normal to the trooper. The trooper then asked Ball whether he would submit to the breath test. Ball again expressed concern about the machine's reliability. The trooper then provided Ball with an explanation of how the machine operated. The trooper even opened the machine to show Ball a heat tape which indi-

cated that the machine was working properly. Despite the trooper's explanation, Ball refused to take the breath test.

Ball's driver's license was subsequently suspended by the Kansas Department of Revenue after the hearing examiner concluded his refusal was unreasonable. On appeal to the district court, Ball only challenged this conclusion by the hearing examiner. The district court upheld the examiner by also concluding the refusal was unreasonable.

The trooper testified before the district court that the machine, known as a crimper box, is only used to gather breath samples and does not analyze the samples to determine blood alcohol content. The trooper testified that the machine uses heat to seal the glass tubes and the light that concerned Ball is used to indicate that the machine has reached the proper temperature to seal the tubes. The trooper noted that the machine also contains a heat tape which changes color when the proper temperature is achieved. In case of a faulty indicator light, the officer can double-check the machine by examining the heat tape. The trooper testified he explained these facts to Ball and assured him that the machine was reliable.

The only issue before us is whether the district court erred in finding that Ball's refusal to submit to the breath test was unreasonable.

Ball contends that the district court erred by not considering the facts and circumstances surrounding his refusal to submit to the breath test. Specifically, he argues the court should have first considered the factual basis for his refusal *before* reaching the legal conclusion that Ball could not reasonably base his refusal on his belief that the breathalyzer machine was not functioning properly.

A careful review of both the transcript and the journal entry demonstrates the trial court first familiarized itself with the facts and circumstances surrounding Ball's refusal before reaching its decision. Further, the court's decision was correct.

Although the issue before us is essentially a fact issue, other courts have also concluded a driver's refusal to take a breath test is not reasonable if based only on his belief that the test was unreliable. In a factually analogous case, *Swedzinski v. Com'r of Public Safety*, 367 N.W.2d 119 (Minn. App. 1985), Swedzinski was arrested for driving under the influence and was asked to

submit to a breath test. On the first attempt at administering the test, the intoxilyzer machine kicked out the test record because of radio frequency interference. Swedzinski was aware of the faulty test. He refused to submit to a subsequent breath test and his license was revoked. On appeal, the trial court rescinded the revocation on the grounds that his refusal was reasonable. The Minnesota Court of Appeals reversed:

> "The trial court found that Swedzinski's 'suspicions' about the intoxilyzer machine (following the initial rejected test) justified his refusal to provide the requested breath sample. A driver who distrusts the intoxilyzer machine may not reasonably refuse to submit to testing. [Citations omitted.] The trial court's reasoning could render ineffective our statute authorizing the intoxilyzer, Minn. Stat. § 169.123, subd. 2b (1984). It is reasonable to project that if appellant's position is upheld, automobile drivers would quickly learn to voice an automatic suspicion about the reliability of the intoxilyzer when requested to take the test. We do not hold that there will never be any grounds to have a valid suspicion about a machine. On these facts we hold that even though the machine itself rejected the first test, the operator's testimony that the machine was working properly after the rejection, along with the recording of a proper air blank sample, placed on Swedzinski the burden to take the test or risk the loss of his license. If he had a good faith doubt about the reliability of the machine, he could have had an additional blood test performed at his own expense under Minn. Stat. § 69.123, subd. 3 (1984)." 367 N.W.2d at 120.

A similar result was reached in *Suspension of Operating Privilege of Bardwell*, 83 Wis. 2d 891, 266 N.W.2d 618 (1978). Bardwell refused to submit to the breath test because he believed, based on his 25 years as a judge and attorney, that only a blood test was reliable. According to the Wisconsin Supreme Court:

> "The legislature has authorized the use of three tests, including the breath test. The legislature has given law enforcement agencies the choice of which of the three to designate as the test that the driver must take first. The legislature has also stated that the designated test may not be the blood test. To permit the respondent to refuse the designated test, even on an informed opinion that the breath test is unreliable, would render the statute meaningless. Law enforcement agencies could never designate the breath test because all drivers could refuse it with impunity on the authority of the respondent. If a driver has a good faith doubt about the reliability of the breath test, he can simply exercise his option to have a blood test performed at his own expense." 83 Wis. 2d at 901.

In *Elliott v. Dorius*, 557 P.2d 759 (Utah 1976), the driver refused to submit to the breath test because he believed that such a test was unreliable and instead requested a blood test. According to the Utah Supreme Court, "A person may not uni-

laterally determine one of the tests designated [by statute] to be unreliable; then, on that alone, claim his refusal to submit to such test was with reasonable cause." 557 P.2d at 762. Accord *McDonald v. Shaw*, 581 P.2d 1017 (Utah 1978).

In the present case, Ball had no knowledge about the workings of the crimper box and presented no evidence to support his suspicion that the machine was actually faulty. The trooper, on the other hand, was familiar with the machine and indicated that the initial difficulty was corrected by switching electrical outlets. The trooper explained the machine's operation to Ball and assured him that it was functioning properly. In light of these facts, Ball's continued doubts about the machine were unreasonable.

Finally, as noted by cases cited from other jurisdictions, Ball's position if upheld would devastate the effectiveness of our drunk driving laws. Any individual's refusal to submit to a breath test could be determined reasonable based solely on an unsupportable suspicion that the test is unreliable. Although we reject Ball's position, individuals suspected of driving under the influence are not without protection. Individuals who sincerely believe that the breath test is unreliable may have an independent blood test administered at their expense. K.S.A. 8-1004. In addition, if there is evidence that a test as given is unreliable, that evidence may be presented to discredit the validity of the test results in any criminal prosecution.

Affirmed.