(754 P.2d 460)

No. 60,851

STATE OF KANSAS, *Appellee,* v. GREGORY GEORGE, *Appellant.*

—

Opinion filed April 21, 1988.

*William S. Mills,* of McPherson, for the appellant.

*Charles I. Prather,* assistant county attorney, *Ty Kaufman,* county attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before SIX, P.J., BRAZIL and ELLIOTT, JJ.

SIX, J.: Defendant-appellant Gregory George appeals his conviction for driving under the influence of alcohol, K.S.A. 1987

Supp. 8-1567. George contends the trial court erred in admitting the results of the State's breath test, K.S.A. 1987 Supp. 8-1004. George also challenges the sufficiency of the evidence supporting his conviction.

The issues are: (1) Did the district court err in admitting into evidence the State's breath test? (2) Was the admission of the State's test harmless error?

We find error and reverse the trial court's ruling on issue one. Issue two is answered, "No." The case is remanded.

On January 1, 1987, the McPherson County Sheriff's Department received a teletype from the Salina Police Department stating that George had telephoned the St. John's Hospital alcohol treatment unit in Salina and was threatening to harm himself or others. Deputy Ingermanson went to George's residence in McPherson. No one was at home. Ingermanson contacted a neighbor for a description of George's car. At 6:38 p.m., Ingermanson spotted George driving and began to follow him. Ingermanson followed George for several blocks while waiting for a backup deputy to arrive. George independently pulled into a driveway and stopped. Ingermanson drove up behind George's car and made a visual and driver's license identification. George stepped out of his car. Ingermanson, with his weapon drawn, ordered George to take his hands out of his pockets and place them on the car. George did so "momentarily" and kept asking, "What's going on?"

Ingermanson then approached George, patted him down, placed him in handcuffs, and advised him he was being placed under arrest in "protective custody" because of the notification from the Salina Police Department.

Ingermanson put George in the patrol car. For the next five minutes Ingermanson talked to George. The deputy was interested in determining whether George was a threat to himself or others and whether George should be in protective custody and taken to a doctor for examination.

Ingermanson testified that during that five minute period, George's speech "was pretty fair," he was "very talkative . . . [k]ind of had a carefree attitude, although it was . . . sort of indifferent." His clothing was orderly. His ability to understand instructions was poor. George was staggering a

bit, and smelled of alcohol. Ingermanson did not ask George to perform field sobriety tests. He believed George was intoxicated and arrested him at 6:42 p.m. on two charges: (1) open container, and (2) driving under the influence (DUI). A sack containing an open rum bottle was found in the front seat of George's car.

George was taken to the Sheriff's office. He refused to perform any coordination tests or answer certain questions on a form. He agreed, however, to take a breath test.

Ingermanson and George then sat for approximately twenty minutes waiting the required time for the breathlyzer to warm up.

Before giving the test, Ingermanson reviewed with George several statements listed on the Implied Consent Advisory Form. Ingermanson had to explain statement number 6 on the form because George had difficulty understanding its meaning. Statement number 6 informed George that he had a right to an attorney and to additional testing if he agreed to take the State's breath test. The breath test, administered at 7:15 p.m., indicated George had a blood alcohol content level of .15%.

After the breath test, George went through the normal booking procedures. At approximately 7:45 to 7:50 p.m., after being processed, George requested to talk to an attorney. He was permitted to do so.

A discussion followed between George and Ingermanson concerning whether George was being held in protective custody, or whether he could bond out. The deputies determined that George would no longer be held in protective custody, but that he would be held on a DUI charge. George was then placed in an isolated holding cell until the bondsman (or his wife) came to pick him up. While in the cell, George asked his jailer (Officer Halburt) numerous times why he was being held. Officer Halburt in turn, repeated these inquiries to Ingermanson.

As Officer Halburt walked by a few minutes later (at approximately 8:12 p.m. according to George's watch) George asked Halburt if he could then be taken for an independent blood test. Ingermanson refused the request. Ingermanson testified he received George's request for the independent sample at 8:20 p.m.

In McPherson, blood tests have to be given at the local hospital. Ingermanson refused to allow the independent test because:

(1) they would have had to transport George to the hospital, and (2) they would have had to have either the doctor on call or the lab technician come down and draw blood. Ingermanson estimated that it would have taken him five to ten minutes to get George ready to go to the hospital (some eight or nine blocks away) and an additional ten or fifteen minutes at the hospital. Had George's request been granted, the second test would have occurred two hours and ten minutes after Ingermanson first saw George driving his car.

George was charged with DUI (K.S.A. 1987 Supp. 8-1567) and with transporting an open liquor container (K.S.A. 41-804). Subsequently, on the State's motion, the open container charge was dismissed and evidence of the rum bottle was not admitted into evidence. George filed a motion to suppress the State's breath test results. K.S.A. 1987 Supp. 8-1004. George reasoned that he had not been permitted to obtain a blood test after having submitted to the State's breath test and, consequently, the State's test should be excluded. The motion was overruled. The court found George guilty of DUI.

## 1. ADMISSIBILITY OF THE K.S.A. 8-1001 BREATH TEST— A REASONABLE OPPORTUNITY TO HAVE ADDITIONAL TESTING

George claims the breath test results were inadmissible under K.S.A. 1987 Supp. 8-1004, which provides:

"Without limiting or affecting the provisions of K.S.A. 8-1001 and amendments thereto, the person tested *shall* have a reasonable opportunity to have an additional test by a physician of the person's own choosing. In case the officer refuses to permit such additional testing, the testing administered pursuant to K.S.A. 8-1001 and amendments thereto shall not be competent in evidence." (Emphasis added.)

The right of a reasonable opportunity to have additional testing when arrested for driving while under the influence is secured by statute. We note the legislature utilized the word "shall" in addressing the right to an additional test. Under K.S.A. 1987 Supp. 8-1004, a person suspected of driving under the influence who has been given an alcohol concentration test has the right to a reasonable opportunity to have an additional test performed. If the suspect is not given this opportunity for additional testing, the State's test is not competent in evidence.

The issue before this court is whether Ingermanson, the McPherson County Deputy Sheriff, provided George with a "reasonable opportunity" to have additional testing. K.S.A. 1987 Supp. 8-1004. The issue of what is a "reasonable opportunity" under 8-1004 is one of first impression in this jurisdiction.

A DUI suspect's statutory right to an additional test has been acknowledged previously. See *State v. Young*, 228 Kan. 355, 363, 614 P.2d 441 (1980); *In re Appeal of Ball*, 11 Kan. App. 2d 216, 719 P.2d 750 (1986).

The trial court ruled that George's request for the additional test was "unreasonable" because (1) when he was first informed of his right to the additional test, he remained silent; (2) George waited over an hour after the first test was given to request the second test; and (3) George's unspecific request simply to go to the hospital and have another test was not reasonable.

George took the State's breath test at 7:15 p.m. One hour later, he exercised his statutory right by requesting an additional test. Ingermanson, the arresting deputy, was still at the jail working on George's case. George had *not* been issued special clothes, and he had been fully processed (fingerprinted, photographed, and booked) at the time of the request. In telling George that once he had submitted to the State's test he could obtain an additional test, Ingermanson did not indicate that the request for additional testing had to be within a certain period of time. Indeed, there is no specific time within which an additional alcohol concentration test must be given. Nothing in the record indicates that Ingermanson was unable to comply with George's request for additional testing. By not granting his request for additional testing, Ingermanson impaired George's ability to procure probative evidence and to prepare a defense.

We hold that there is coupled with a DUI suspect's statutory right to additional testing a corresponding duty on the part of law enforcement officers not to deny the suspect that right. Law enforcement officers may not nullify a right granted to a citizen by the legislature. George did not have a reasonable opportunity to obtain additional testing. Under the facts of this case, the denial of George's request for additional testing violated K.S.A. 1987 Supp. 8-1004 and the State's breath test should have been excluded. What is a "reasonable opportunity" will depend on the

circumstances in each case. When a DUI suspect is detained under arrest the opportunity afforded him must be consistent with safe custody. What may be a reasonable opportunity in one locality may not necessarily be reasonable in another.

A similar result was reached in *Blaine v. Suess*, 93 Wash. 2d 722, 612 P.2d 789 (1980). In *Blaine*, the defendant agreed to a breath test. The defendant invoked his statutory right and requested an independent blood alcohol test. Although the police had agreed to take him to a nearby hospital for the test, they took him to jail. The blood test was never given. The issue in *Blaine* was whether the police provided the defendant with a reasonable opportunity for an independent test. The defendant claimed the failure to obtain such a test directly impaired his ability to prepare his defense.

The Supreme Court in *Blaine* reversed the conviction and dismissed the case, holding that the police unreasonably interfered with the defendant's attempt to obtain probative evidence. 93 Wash. 2d at 727-28. According to the Washington court, the defendant did everything a reasonable person could have done to obtain an additional test. "While the law enforcement authorities have no duty to volunteer to arrange for testing, they must not thwart an accused's attempts to make such arrangements." 93 Wash. 2d at 728. See *People v. Gillett*, 629 P.2d 613, 619 (Colo. 1981) ("When the arresting officer initially invokes the implied consent law and . . . denies the driver's request for a blood test, the driver is deprived of his right to establish non-intoxication by a highly reliable form of chemical testing."); *Puett v. State*, 147 Ga. App. 300, 248 S.E.2d 560 (1978) (Accused was advised of his right to an independent test and a telephone conversation was had between the accused and a local hospital in which he was informed that a test could be made if he would come to the hospital. The accused so informed the jail personnel and those holding him refused or failed to take him to the hospital; conviction reversed.); *People v. Dawson*, 184 Cal. App. 2d Supp. 881, 7 Cal. Rptr. 384 (1960) (The refusal of defendant's request to call his own doctor to perform an additional test denied defendant a reasonable opportunity for an additional test.).

The State contends the criteria set out in *Standish v. Department of Revenue*, 235 Kan. 900, 683 P.2d 1276 (1984), should be

used to determine whether George was given a reasonable opportunity to obtain additional testing. In *Standish*, the defendant refused to submit to an on-the-scene breath test and to a breath test at the police station. Thirty minutes after the second refusal, the defendant consented to the test but the jailer refused to administer it because the consent was too late.

The present case is distinguishable from *Standish*. The issue in *Standish* was whether the defendant had timely rescinded his earlier refusal to take the State's test. A question in the present case is whether George made a timely request for a K.S.A. 1987 Supp. 8-1004 additional test. Furthermore, in *Standish*, the arresting officer had already left the building when the defendant rescinded his earlier refusal to take the State's test. In the present case, the arresting deputy was in the same building as George working on George's case.

While the State is not required to provide a DUI suspect with a free additional test, it may not unreasonably interfere with a suspect's reasonable attempts to secure an additional test, at his own expense, by a physician of his own choosing, for the purpose of attempting to secure evidence for his defense at or near the crucial time under consideration. Under the circumstances of this case, we hold Ingermanson, by refusing George's request, did unreasonably interfere with George's effort to procure probative evidence.

## 2. ADMISSION OF THE STATE'S TEST—
### WAS IT HARMLESS ERROR?

Having determined the admission of the State's breath test was error, we must determine whether or not such error was harmless. "In applying the Kansas harmless error rule (K.S.A. 60-2105), a reviewing court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such a belief beyond a reasonable doubt." *State v. Alexander*, 240 Kan. 273, 276, 729 P.2d 1126 (1986).

We cannot say beyond a reasonable doubt that the erroneous admission of the State's test had little, if any, likelihood of changing the result of the trial. We note the emphasis the trial court placed on the State's test (State's Exhibit 1):

"Therefore, I find the defendant guilty of DUI. I base that on State's Exhibit number 1. I understand defense has an ongoing objection which I have at this point overruled. But State's Exhibit number 1 does indicate that the test results showed that blood alcohol level was 0.15 percent. That is over the limit contained within K.S.A. 8-1567 which does provide of course, that if the contents at the time are within two hours after the defendant's blood was .10 or above, that does constitute a per se violation of the DUI statute. Based upon that portion and State's Exhibit number 1, the testimony of the officer, which I find to be persuasive on the issue that Mr. George was driving, I find the defendant guilty of the offense of DUI."

The evidence, without the State's breath test, in view of the trial court's reliance upon it, was not of a degree of sufficiency as to render harmless the error in admitting the State's test. Accordingly, we reverse the judgment of conviction and remand the case for a new trial, if the State be so inclined.

## 3. INFORMING GEORGE OF HIS RIGHTS REGARDING TESTING

George contends the trial court erred in admitting the breath test results into evidence because Ingermanson failed to adequately inform George of his rights regarding the testing.

Because of the decision we have reached concerning the inadmissibility of the State's test, we need not consider George's inadequate form argument.

Reversed and remanded.