(307 P.3d 255)

No. 108,184

STATE OF KANSAS, *Appellee*, v. PHILLIP M. MESSER, *Appellant*.

Decision vacated Nov. 17, 2014.

Opinion filed August 23, 2013.

*Edward C. Gillette, Michael S. Mogenson,* and *Grant M. Reichert,* of Gillette Law Firm, P.A., of Mission, for appellant.

*Shawn E. Minihan,* assistant district attorney, *Stephen M. Howe,* district attorney, and *Derek Schmidt,* attorney general, for appellee.

Before LEBEN, P.J., GREEN and STANDRIDGE, JJ.

LEBEN, J.: Phillip Messer failed field-sobriety tests after a traffic stop and then failed an evidentiary breath test at the police station. At that point, having been told that he had the right to secure additional alcohol-concentration testing, Messer asked the officer for an independent blood test. Rather than taking Messer to a hospital to get a blood test, the officer told Messer that he could get that test on his own after he was released. Messer was able to leave within 45 minutes of his request, but he didn't go to get a blood test after his release.

Messer asked the district court to exclude evidence of his failed breath test, citing K.S.A. 8-1004, under which that test result will be excluded if "the officer refuses to permit . . . additional testing" for the driver. The district court denied Messer's request and convicted him based on the evidence.

Messer has appealed, again raising K.S.A. 8-1004. But that statute begins by providing that the person who takes the breath test given by an officer "shall have a *reasonable opportunity* to have an additional test by a physician of the person's own choosing." (Emphasis added.) Messer was released from custody within 45 minutes of making the request for additional testing—giving him a "reasonable opportunity" to get that testing done. Accordingly, the district court properly denied Messer's request that the breath-test evidence be excluded; with that evidence, the district court's conviction of Messer must be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Messer was stopped in Overland Park for making an illegal U-turn at 1:22 a.m. on November 13, 2010. After Messer performed poorly on field-sobriety tests, the officer asked him to take a preliminary breath test. Messer refused, and the officer arrested him for a DUI offense.

After being taken to a nearby police station, Messer agreed to take the Intoxilyzer 8000 breath test. He took that test at 2:38 a.m., registering a breath-alcohol concentration of .147—well above the legal limit of .08.

Kansas law provides that a person must be advised of various rights as he or she goes through the process of being asked to take a preliminary breath test and, later, an evidentiary breath test. Before giving Messer the evidentiary breath test, the officer gave Messer a required notice that Messer had a right to obtain additional testing:

"After completion of testing, you have the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities willing to conduct such testing."

Sometime after Messer took the evidentiary breath test, he asked the officer for an additional blood test.

The officer responded that he wouldn't take Messer to get a blood test but that Messer could get one himself once he was released or bonded out. The officer testified that his department's policy was to take the suspect to get an additional test only if the suspect was to remain in custody. The officer also testified that Messer was released at 3:10 a.m. Video footage showed Messer leaving the police station at 3:21 a.m. Messer's attorney told the district court that Messer didn't get a blood test after he left the station.

Messer was charged with a third-offense DUI and with refusing to submit to a preliminary breath test. Before trial, he filed a motion to suppress the results of the evidentiary breath test, arguing that he was denied a reasonable opportunity to get additional testing. After an evidentiary hearing, the district court denied Messer's motion.

The district court noted that the State argued that Messer was released at 3:10 a.m. (based on the officer's testimony), while the defendant contended he was released at 3:20 a.m. The district court found that this 10-minute difference wasn't important and that Messer was released "at most" 42 minutes after he requested additional testing. The court concluded that Messer had a reasonable opportunity to obtain additional testing and that the officer didn't unreasonably interfere with Messer's ability to obtain that test.

Before trial, Messer also made one other argument—that the 2011 amendments to the DUI statute should apply retroactively to offenses committed before 2011. The 2011 amendment provided that past DUI offenses that occurred before July 1, 2001, would no longer be counted for sentencing purposes. Thus, had the 2011 amendment been applied, one of Messer's prior DUI offenses—a 2000 DUI diversion agreement—wouldn't have been counted, and Messer's 2010 offense would have become a second-time DUI. The district court rejected Messer's argument, concluding that the statutes in place at the time of Messer's 2010 offense applied.

The district court convicted Messer on both the DUI charge and the charge of refusing the preliminary breath test. Messer appealed to this court.

## ANALYSIS

I. *The District Court Correctly Determined That Messer Was Given a Reasonable Opportunity to Obtain His Own Alcohol-Concentration Test.*

Messer's main claim on appeal is that he wasn't given a reasonable opportunity to get his own alcohol-concentration test. He claims that this violated his statutory rights, so we begin our analysis with the statutes that may apply. We cite to the statutes that were in effect at the time of Messer's arrest in November 2010.

The main statutes we must consider are K.S.A. 2010 Supp. 8-1001, which gives law-enforcement officers the ability to request that a driver provide a breath, blood, or urine sample, and K.S.A. 8-1004, which provides that the driver be given a reasonable opportunity to obtain an independent test.

K.S.A. 2010 Supp. 8-1001(b) allows an officer to request testing in several circumstances, including where the officer has reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol or drugs. Messer doesn't question the officer's authority to request testing in this case. K.S.A. 2010 Supp. 8-1001(k) provides that the driver be given several notices both orally and in writing before the test is given. Among those is the notice Messer was given that he had a right—after the completion of the officer's test—to "secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities willing to conduct such testing." K.S.A. 2010 Supp. 8-1001(k)(10).

K.S.A. 8-1004 sets out the driver's right to "a reasonable opportunity" to get an independent test. But the statute also provides a penalty—that the original breath test can't be used in evidence—if the officer "refuses to permit" an independent test:

"Without limiting or affecting the provisions of K.S.A. 8-1001 and amendments thereto, the person tested shall have *a reasonable opportunity* to have an additional test by a physician of the person's own choosing. In case the officer refuses

to permit such additional testing, the testing administered pursuant to K.S.A. 8-1001 and amendments thereto shall not be competent in evidence." (Emphasis added.) K.S.A. 8-1004.

From these statutes, the basic contours of a driver's right to an independent test are fairly clear, though the use of the term "reasonable opportunity" means that a bright-line test—a simple, straightforward test for making judicial decisions—isn't possible here. Concepts of "reasonableness" always bring some element of opinion and subjective judgment into play, even though we attempt to arrive at an objective standard. But the language of K.S.A. 8-1004 helps us to determine what an officer can and can't do when a driver wants to exercise his or her right to get an independent test:

- The officer can't "refuse[] to permit such additional testing." But the officer's power over the driver lasts only as long as the driver is in custody. So this tells us that an officer can't keep a person in custody indefinitely without—upon request—taking the person to get the independent test. But if the officer were to release the driver immediately after taking the evidentiary test, the officer couldn't have "refuse[d] to permit such additional testing" because the driver would no longer have been under the officer's control.
- It's primarily the driver's responsibility to obtain the independent test. The statute tells us that the test may be obtained from "a physician of the person's own choosing," and the statute simply calls for the "reasonable opportunity to have an additional test," not for the State to provide a second test to the driver.

Let's consider Messer's case now within this context. Messer wasn't released immediately after the officer's evidentiary breath test. Rather, he first had to post a bond, promising to appear in court and perhaps agreeing to certain conditions intended to promote public safety. See K.S.A. 2010 Supp. 22-2802(1); K.S.A. 2010 Supp. 12-4213; K.S.A. 12-4301. We also presume that formal booking procedures are probably done after the evidentiary breath test has shown a result above the legal limit. But despite those steps in

the release process, the time from Messer's request of an independent test until his release on bond was fairly brief.

The district court concluded that Messer was released no more than 42 minutes after he requested additional testing. And we must accept the district court's factual findings if they are supported by substantial evidence. *State v. Johnson*, 297 Kan. 210, 301 P.3d 287, 293 (2013). The officer's breath test was done at 2:38 a.m. Messer requested the independent test sometime after that—2:39 a.m. would be a reasonable estimate in Messer's favor. The video shows Messer leaving the police station 42 minutes later, at 3:21 a.m., and he obviously had posted his bond and been released sometime before he went out the front door of the station. So there is substantial evidence to support the district court's factual finding on this point, which is the only factual issue on which there is any potential disagreement.

We now have substantially narrowed the question we must answer here: Messer was released from custody within 42 minutes of the request for an independent test and less than 2 hours after he had last been observed driving. In such a case, if the officer doesn't take the driver to get the testing while he's still in custody, has the officer refused to permit the independent test? On this ultimate legal question, we must provide our own answer, without any required deference to the district court. *Johnson*, 301 P.3d at 293.

We've already established that the officer doesn't have an obligation to help the driver get an independent test if the driver is released from custody immediately after the officer administers the evidentiary test. But that would never happen, of course. Like Messer, the person usually has been arrested and must then post bond and go through some procedures to finish up the process.

So what of the more typical situation—like Messer's—in which the driver is in custody for a short time after asking for the independent test but is released without any evidence of delay designed to prevent him from getting a test? In such cases, the driver still has a reasonable opportunity to get the test, and officers haven't prevented the driver from doing so. Thus, there is no basis to suppress evidence of the evidentiary test under K.S.A. 8-1004.

Surely that is so in Messer's case. He was released within 42 minutes after he made the request and within 2 hours of the time of the traffic stop. He still had a reasonable opportunity to obtain an independent test at the time he was released.

The result we reach is in line with two past appellate decisions. In fact, these two opinions—*City of Dodge City v. Turner*, No. 89,467, 2004 WL 421969 (Kan. App. 2004) (unpublished opinion), *rev. denied* 278 Kan. 843 (2004), and *State v. Huston*, No. 90,758, 2004 WL 720126 (Kan. App. 2004) (unpublished opinion), *rev. denied* 278 Kan. 849 (2004)—are essentially indistinguishable from Messer's case.

In *Turner*, the defendant was released from custody 50 minutes after he had requested an independent test and within 2 hours of the traffic stop. In *Huston*, the defendant was released 45 minutes after he had requested an independent test and 2 hours and 12 minutes after the traffic stop. In both cases, our court held that the driver had been given a reasonable opportunity to get the independent test. *Turner*, 2004 WL 421969, at *3; *Huston*, 2004 WL 720126, at *2. In *Huston*, the court added that the officer had done nothing that unreasonably interfered with the driver's right to have an additional test. *Huston*, 2004 WL 720126, at *2.

Messer cites to another of our past cases, *State v. George*, 12 Kan. App. 2d 649, 754 P.2d 460 (1988), and it provides some support for his position. In *George*, the driver asked for an independent test about an hour after he had taken the evidentiary breath test—but still less than 2 hours after the traffic stop. The driver was in custody, awaiting a bondsman or a family member to obtain his release. According to our court's decision in *George*, an officer unreasonably "refused the request" for an independent test. 12 Kan. App. 2d at 651.

There were some other facts in the *George* case to support our court's conclusion that refusing the test was unreasonable under the circumstances presented. The court's opinion tells us that the hospital where a blood test could have been given was only a few blocks from the police station. The defendant's appellate brief includes testimony from the officer who administered the evidentiary breath test saying that he would take George to the hospital for an

independent test if he wanted one: "I told him after he submits to my testing that I would take him up to the hospital and he could have a blood test or any other test he wanted run, as available, at his expense."

The State's argument on appeal in *George* was a very limited one: The State simply argued that George had waited too long to request the independent test. In its brief, the State agreed that "[h]ad the Defendant asked for additional testing in [an earlier] conversation with the officer . . . , there would have been no question but that he was entitled to the independent testing." But since George hadn't requested the test until more than an hour after the evidentiary breath test, the State argued that "the delay in requesting additional testing rendered that request unreasonable."

Our court disagreed, concluding that George didn't have a reasonable opportunity to obtain the additional testing. The court emphasized that "[w]hat is a 'reasonable opportunity' will depend on the circumstances in each case." 12 Kan. App. 2d at 653-54. The *George* court noted that "[n]othing in the record indicates that [the officer] was unable to comply with George's request for additional testing." 12 Kan. App. 2d at 653.

There is one key fact from *George* on which we have no information—when he was released from custody. Neither the court's opinion nor the appellate briefs tell us.

Ultimately, since K.S.A. 8-1004 requires a reasonable opportunity to obtain an independent test, the question is one of reasonableness, which presents a judgment call. In *George,* where the officer said he'd take the driver to the hospital for an independent test at the driver's request—and the hospital was only a few blocks away—our court held it was unreasonable not to take the driver to the hospital for the test when he made that request an hour later and was still in custody. In *Turner* and *Huston,* as in Messer's case, the driver was released from custody less than 2 hours after the traffic stop and within 40 to 50 minutes after making the request for an independent test. Unlike *George,* no promise had been made in *Turner, Huston,* or here to give the defendant a ride to the hospital for independent testing.

In our judgment, Messer had a reasonable opportunity to obtain independent testing, and that's all that the statute requires. The district court properly denied his motion to suppress evidence of his breath-test result.

II. *The District Court Correctly Applied the Sentencing Statutes in Effect at the Time of Messer's Offense to Sentence Him.*

Messer raises one other issue on his appeal—that the 2011 amendments to the Kansas DUI statute should have been applied when he was sentenced. The 2011 amendments, which became effective July 1, 2011, provide that when determining whether a conviction is a first, second, third, or subsequent conviction, "only convictions occurring on or after July 1, 2001, shall be taken into account." K.S.A. 2011 Supp. 8-1567(j)(3). In contrast, at the time of Messer's offense, the statute provided that "any [DUI] convictions *occurring during a person's lifetime* shall be taken into account when determining the sentence to be imposed." (Emphasis added.) K.S.A. 2010 Supp. 8-1567(o)(3). Determining whether the 2011 amendment should be applied when sentencing for a DUI offense that occurred in 2010, like Messer's, is a matter of statutory interpretation, a legal question that appellate courts determine independently, without any required deference to the district court. *State v. Mason*, 294 Kan. 675, 676, 279 P.3d 707 (2012).

Whether to apply the 2011 amendments when sentencing Messer is important because his 2000 diversion agreement for DUI would no longer be considered. That would make the 2010 offense a second-offense DUI, which is a misdemeanor, rather than a third-offense DUI, which is a felony. See K.S.A. 2010 Supp. 8-1567(f)(1); K.S.A. 2011 Supp. 8-1567(b)(1)(A). The penalties for the second-offense, misdemeanor DUI are—not surprisingly—less than those for the third-offense, felony DUI.

But the general rule in Kansas is that a defendant is sentenced based on the law in effect when the crime was committed. *State v. Williams*, 291 Kan. 554, 559, 244 P.3d 667 (2010); *State v. Walker*, 277 Kan. 849, 850, 89 P.3d 920 (2004). As a policy matter, "having the penalty parameters for an offense 'fixed as of the date of the commission of the offense is fair, logical and easy to apply.' " *Wil-*

*liams*, 291 Kan. at 560 (quoting *State v. Vandervort*, 276 Kan. 164, 180, 72 P.3d 925 [2003]). In addition, a statute generally operates prospectively (applying only to future events) unless the language of the statute clearly makes the statute retroactive (thus applying its provisions to earlier events, such as the acts constituting a crime). The only exception to this rule is if the statutory change is procedural or remedial in nature and does not prejudicially affect the parties' substantive rights—rights that can be enforced by law. *Williams*, 291 Kan. at 557.

Messer argues that the 2011 amendment regarding which past DUI offenses would count should be applied retroactively because the amendment contains plain language indicating retroactivity, the amendment is procedural in nature, interpretation of the whole act indicates that this section should be applied retroactively, and failing to apply this section retroactively would lead to unreasonable results. But several panels of this court have rejected arguments nearly identical to those raised by Messer. See *State v. Reese*, 48 Kan. App. 2d 87, 91, 283 P.3d 233 (2012), *petition for rev. filed* September 4, 2012. The *Reese* decision thoroughly considered retroactive application of the amendment and rejected retroactivity as inconsistent with settled Kansas authority considering changes in sentencing statutes. 48 Kan. App. 2d at 88-91. Since *Reese* was decided, all of the decisions of this court that we're aware of have agreed with *Reese's* analysis. See, *e.g.*, *State v. Cox*, No. 107,741, 2013 WL 2321173 (Kan. App. 2013) (unpublished opinion), *petition for rev. filed* June 13, 2013; *State v. Shafer*, No. 107,988, 2013 WL 2321186, at *2 (Kan. App. 2013) (unpublished opinion), *petition for rev. filed* June 13, 2013; *State v. Miller*, No. 108,302, 2013 WL 1943153, at *6 (Kan. App. 2013) (unpublished opinion); *State v. Ulrich*, No. 107,785, 2012 WL 5869662, at *1-4 (Kan. App. 2012) (unpublished opinion), *petition for rev. filed* December 17, 2012; *State v. Schmidt*, No. 107,581, 2012 WL 4121132, at *1 (Kan. App. 2012) (unpublished opinion); see also *State v. Thacker*, No. 107,464, 2012 WL 3136812, at *1-2 (Kan. App. 2012) (unpublished opinion) (decided before *Reese*; refusing to apply 2011 amendments retroactively), *petition for rev. filed* August 22, 2012.

We also agree with the *Reese* decision and adopt its analysis. In *Reese*, this court upheld the district court's finding that the amendment to the "look-back" statute was a substantive change in the law that should not be applied retroactively. 48 Kan. App. 2d at 90-91. The *Reese* court concluded it should apply the Kansas Supreme Court's finding from *Williams*, 291 Kan. at 557, that a statutory amendment modifying the severity of punishment for a conviction affects the defendant's substantive rights, and therefore only operates prospectively. *Reese*, 48 Kan. App. 2d at 90.

Furthermore, the *Reese* court rejected an argument that under the plain language of the statute, the date of sentencing should be used to determine which version of the statute to apply. 48 Kan. App. 2d at 89-90. The *Reese* court based its decision on the fact that the legislature explicitly provided for retroactive application of other aspects of the act in which this amendment to the "look-back" statute was included, so the legislature's failure to explicitly provide for retroactive application for K.S.A. 2011 Supp. 8-1567(j)(3) meant it intended this "look-back" change to be applied prospectively only. *Reese*, 48 Kan. App. 2d at 90-91.

Finally, the *Reese* court rejected an argument that the statute should be retroactively applied simply because the defendant should receive the benefit of any sentencing amendment that would lessen his sentence. 48 Kan. App. 2d at 91. The court rejected this argument because the Kansas Supreme Court has not recognized a rule that would apply a statute retroactively for this reason. 48 Kan. App. 2d at 91; see *Ulrich*, 2012 WL 5869662, at *9. Nor would such a rule seem sensible: a person's sentence could depend upon how long it took for charges to be brought or for the case to move forward (increasing the chance that changes might be made in the sentencing statutes), not on the sentence applicable at the time the offense was committed. Everyone is presumed to know the criminal penalties that attach to their conduct, and uniformly applying the penalties in place on the date of each defendant's conduct is the surest way to assure fair treatment of all defendants.

Messer cites *Dorsey v. United States*, 567 U.S. ___, 132 S. Ct. 2321, 183 L. Ed. 2d 250 (2012), in support of his position that the

amendments should be applied retroactively. The *Dorsey* Court interpreted the Fair Sentencing Act that reduced penalties for crimes related to crack cocaine. Based upon the language of the federal statute, the Court concluded that there was a " 'fair implication' " that Congress intended to have the sentencing amendment applied retroactively, despite the lack of express congressional intent. 132 S. Ct. at 2335. In its analysis, the *Dorsey* Court relied on the Sentencing Reform Act's express statement that the amended sentences " 'in effect on the date the defendant is sentenced' " control regardless of the date of the crime. 132 S. Ct. at 2331 (quoting 18 U.S.C. § 3553[a][4][A][ii]). Moreover, the Fair Sentencing Act contained a specific congressional finding that previous sentences for crimes involving crack cocaine, when compared to sentences involving powder cocaine, were "unfairly long." *Dorsey*, 132 S. Ct. at 2333.

In contrast, the 2011 DUI amendments do not contain any similar language or legislative findings that were present in *Dorsey*. The federal amendments in *Dorsey* did not attempt to alter general practices relating to the retroactivity of sentencing statutes, but were specific changes addressing a disparity in the sentencing scheme between crimes involving two different forms of cocaine. See *Ulrich*, 2012 WL 5869662, at *9. So *Dorsey* is clearly distinguishable from the present case.

The *Reese* court's reasoning is sound and persuasive. Messer does not present any compelling new arguments that were not addressed in *Reese* and other cases examining retroactivity of an amended statute. The amendments to K.S.A. 8-1567 do not apply retroactively, and Messer was not entitled to be sentenced under the amended statute.

The district court's judgment is affirmed.