(313 P.3d 99)
No. 109,518

STATE OF KANSAS, *Appellant*, v. ANDREW LYNN RICHMEIER,
*Appellee*.

—

Opinion filed November 22, 2013.

*Thomas J. Drees*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellee.

Before LEBEN, P.J., MCANANY and POWELL, JJ.

MCANANY, J.: In this appeal the State contends that the district court erred in suppressing the results of a blood-alcohol test which the State intended to use in prosecuting its case against Andrew Lynn Richmeier for driving under the influence (DUI) of alcohol in violation of K.S.A. 2011 Supp. 8-1567. We agree and reverse and remand the case for further proceedings.

On November 26, 2011, Deputy Brian Shannon stopped Richmeier for speeding. In the course of the stop, Shannon concluded that Richmeier was intoxicated. He arrested Richmeier and took him to the sheriff's office for processing. Shannon requested that Richmeier submit to a blood-alcohol test. As required by the Kansas Implied Consent statute, Shannon read the Implied Consent Advisory form to Richmeier and provided him with a copy of the form. Richmeier agreed to submit to blood-alcohol testing. See K.S.A. 2011 Supp. 8-1001(k). Deputy Shannon told Richmeier that after taking the test he could speak with counsel and that he could request an independent test if he chose. See K.S.A. 2011 Supp. 8-1001(k)(9).

Shannon drove Richmeier to Quest Diagnostics, and a blood sample was drawn at 2:05 a.m. Shannon then returned Richmeier to the jail for processing. Richmeier later testified at the suppression hearing that upon returning to the jail, he asked to speak to a lawyer because he thought his "rights had been violated at that point." He testified that he told the jailer, "I believe my rights have been violated. I need to talk to an attorney, and I specifically asked for [Michael Holland] or Greg Schwartz." According to Richmeier, the jailer told him he would have to call a bondsman and arrange for bond first. Richmeier called the bondsman.

"Q    And how long did it take you to bail out?
"A    I believe it was fairly quickly. My brother had to go get the money for me, and I believe it was 15 minutes, 20 minutes.
"Q    Okay. So after those 15 or 20 minutes, then you bonded out?
"A    I did."

Richmeier's brother arrived and drove Richmeier home. Richmeier made no effort to call his attorney when released from the jail that night. He stated at the suppression hearing:

"[I]t was that late at night. I figured I had already bonded out, I would take care of it in the morning.

. . . .

"And I didn't think it would make a difference. I mean I was already bonded out, I figured my, you know, what was going to be taken care of was going to be taken care of, you know."

Richmeier called his attorney the next day.

The district court suppressed the State's blood-test results. The court found that the delay in providing Richmeier with access to a lawyer violated K.S.A. 2011 Supp. 8-1001(k)(9) and required suppression of the evidence. The State appealed.

On appeal, we review the district court's findings of fact to determine whether they are supported by substantial competent evidence. We review de novo the ultimate legal conclusion drawn from those facts. See *State v. Murphy*, 296 Kan. 490, 492, 293 P.3d 703 (2013). Further, our interpretation of the relevant statutes is de novo. *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011).

The fundamental rule of statutory construction is to ascertain the legislature's intent. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). Ordinary words are given their ordinary meanings. *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010). A statute should not be read to add language that is not found in it or to exclude language that is found in it. When a statute is plain and unambiguous, the court must give effect to the legislature's intent as expressed rather than determining what the law should or should not be. 291 Kan. at 216.

K.S.A. 2011 Supp. 8-1001(b) permits law enforcement officers to request that a driver provide a breath, blood, or urine sample for blood-alcohol testing if the officer has reasonable grounds to believe the person has been operating a vehicle while under the influence of drugs or alcohol. The driver has no constitutional right to consult with an attorney regarding whether to submit to testing. K.S.A. 2011 Supp. 8-1001(k)(3); *State v. Bristor*, 236 Kan. 313, Syl. ¶ 5, 691 P.2d 1 (1984). But K.S.A. 2011 Supp. 8-1001(k)(9) pro-

vides a statutory right to consult with an attorney "after the completion of the testing."

K.S.A. 2011 Supp. 8-1001(k) spells out the oral and written notices which the officer must give the driver before blood-alcohol testing. Pursuant to KS.A. 2011 Supp. 8-1001(k)(9), the driver must be notified that "after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities willing to conduct such testing."

We acknowledge that, as stated in *State v. Kelly*, 14 Kan. App. 2d 182, 189, 786 P.2d 623 (1990), a driver's right to consult with an attorney is not confined to the issue of whether the driver should seek additional testing. But in his memorandum in support of his motion to suppress the test results in the present case, Richmeier argued: "The primary purpose in requiring an officer to allow an individual to speak with an attorney while still in custody is so that the individual can discuss with their [*sic*] attorney whether or not to request additional testing." Further, at the suppression hearing Richmeier testified that he wanted to speak to his lawyer about what he perceived to have been a violation of his rights, apparently by having been compelled either to submit to the blood-alcohol test or be subject to further consequences as described in K.S.A. 2011 Supp. 8-1001(k)(4), not about whether he should seek additional testing. When he had the opportunity to call an attorney about 15 to 20 minutes after making the request, he chose not to do so and waited until the next day to talk to his lawyer.

The court in *Kelly* noted that there are separate rights (1) to consult with an attorney and (2) to seek additional testing. See 14 Kan. App. 2d at 189. Obviously, time is of the essence when consulting with an attorney about whether to seek additional testing. The statute stresses that additional testing "if desired, should be done as soon as possible." K.S.A. 2011 Supp. 8-1001(k)(9). But here, Richmeier's stated purpose of wanting to speak to his lawyer was to inquire about the legality of what had already happened to him while in custody. When he was released from jail 15 to 20

minutes later, he did not take advantage of his right to call his lawyer.

Though K.S.A. 2011 Supp. 8-1001(k) does not impose a strict time limit on providing the driver with the opportunity to consult with an attorney, the district court treated the 15- to 20-minute delay while Richmeier arranged for bond to be a per se violation of Richmeier's right to contact his counsel and suppressed the test results. The district court stated:

"The state correctly argues that the defendant had the opportunity for independent testing due to the fact that he bonded out of jail 15 to 20 min. after submitting his blood sample. If this was the issue in this motion to suppress, the state would prevail. However, the issue is whether the defendant was denied his statutory right to consult with an attorney. The court finds that the defendant did request the opportunity to call his lawyer and this was not afforded to him by either the arresting officer or the jailer. Instead, defendant was given the opportunity to bond."

Access to a lawyer should be "as soon as possible" with respect to advice about further testing. But based on Richmeier's post-booking conduct, the issue he was concerned about—the possible deprivation of his rights—could await the cold light of day and did not need to be explored further at 2:30 in the morning.

But while Richmeier did not want to call his lawyer to discuss additional testing, had he been able to do so immediately following his request, his lawyer may have urged him to seek additional testing which would have been meaningful only if accomplished "as soon as possible." As soon as possible would have been after Richmeier's 15- to 20-minute booking procedure. So did this 15- to 20-minute delay in any meaningful way deprive Richmeier of any of his rights?

In *State v. Lynch*, No. 85,915, unpublished opinion filed September 21, 2001 (Kan. App.), slip op at *3-5, the court found that the defendant was denied his statutory right to consult with an attorney and secure additional testing under K.S.A. 2000 Supp. 8-1001(f)(1)(J) when he requested an opportunity to consult with his attorney but was denied the chance while he was placed in a holding cell. But in *Lynch*, the delay was not a matter of minutes as is

the case here. In *Lynch*, the defendant was denied access to a lawyer for several hours.

In *Kelly*, after the defendant submitted to a breath test at the county jail he requested a blood test. He also requested to see his attorney. On the way to the hospital for the blood test, Kelly repeatedly asked that his lawyer be present for this further test. The officer refused to permit Kelly to call his lawyer, so Kelly refused to submit to the blood test and was returned to jail.

Kelly's failure to obtain additional testing was predicated upon the State's refusal to provide him the opportunity to consult with his lawyer. Kelly argued on appeal that the remedy for the denial of his right to contact his lawyer should be the dismissal of the charges. But the *Kelly* court noted that there was no statutory sanction for a denial of the statutory right to consult with counsel in this context. So the court looked to K.S.A. 1987 Supp. 8-1004, which provided a remedy when the State failed to allow independent testing. Under that statute, "the person tested shall have a *reasonable opportunity* to have an additional test" (emphasis added); and if that opportunity is denied, the State's test results "shall not be competent in evidence." K.S.A. 1987 Supp. 8-1004. Thus, consistent with the remedy for denying a reasonable opportunity for an additional test, the *Kelly* court determined that the proper remedy for denying access to counsel was the suppression of the State's test results. 14 Kan. App. 2d at 191-92.

This mandated "reasonable opportunity" found in K.S.A. 8-1004 was discussed in *State v. George*, 12 Kan. App. 2d 649, Syl. ¶ 2, 754 P.2d 460 (1998), and was found to depend on the particular circumstances of the case.

In *State v. Huston*, No. 90,758, 2004 WL 720126 (Kan. App.) (unpublished opinion), *rev. denied* 278 Kan. 849 (2004), the defendant was released 45 minutes after he had requested an independent test. When he went to the hospital for additional testing after he had been released, the hospital nurse denied the test because the arresting officer was not present. The court stated: "He was released 45 minutes after requesting an additional test, and at that time he was free to secure an additional test. There was no unreasonable delay by the State." 2004 WL 720126, at *2.

In *State v. Messer*, No. 108,184, 2013 WL 4499117 (Kan. App. 2013) (unpublished opinion), a panel of this court applied the reasonable opportunity analysis to a situation in which a DUI defendant posted bond shortly after he requested a second independent test. Messer was released within 42 minutes of making a request for an independent test. Messer claimed that he was not given a reasonable opportunity to obtain an independent blood-alcohol test. The court applied the reasonable opportunity analysis and found that Messer had a reasonable opportunity to obtain independent testing when he was released about 42 minutes after making the request. Thus, the panel held the district court properly denied Messer's motion to suppress the results of his breath test. 2013 WL 4499117, at *6.

We find no sound rationale for rejecting the reasonable opportunity standard under the facts of this case. Richmeier would have us impose a strict and arbitrary standard requiring his jailer to interrupt the booking process and provide Richmeier with access to his attorney immediately upon his request. Immediacy ("as soon as possible") under the statute specifically relates to the issue of additional testing. Consulting with an attorney on other matters, such as the propriety of the officer's initial testing, does not have the same level of urgency. Any additional testing could have only occurred after the booking process was completed. Richmeier had ample and timely access to an attorney when that process was complete, a mere 15 to 20 minutes after his request. The delay during the booking process was de minimus. Though he had a reasonable opportunity to contact his lawyer at that time, he chose not to do so. Thus, we conclude that the district court erred in suppressing the results of the State's earlier blood-alcohol test.

Reversed and remanded for further proceedings.

\* \* \*

LEBEN, J., concurring: After the completion of any evidentiary breath or blood tests arising after a DUI traffic stop, a statute, K.S.A. 2011 Supp. 8-1001(k)(9), tells us that the driver "has the right to consult with an attorney." But the statute doesn't tell us

how quickly the driver's request to talk to an attorney after testing must be granted to comply with the statute, and the defendant generally is in police custody when the evidentiary breath or blood test is given.

In this case, when Andrew Lynn Richmeier asked to speak to an attorney, police or jail personnel told him to bond himself out if he wanted to talk to an attorney. That's not a response that seems respectful of the right provided in this statute. But the officers knew that it usually didn't take long to bond out, and Richmeier was able to bond out within 15 to 20 minutes.

The initial question before us is whether the police and jail personnel violated Richmeier's statutory right to talk with an attorney. If we answer yes to that question, then we would need to decide whether the proper remedy for a violation is the suppression of the breath or blood test, which is the remedy our court approved in *State v. Kelly*, 14 Kan. App. 2d 182, Syl. ¶ 3, 786 P.2d 623 (1990).

On the facts of our case, I do not find that Richmeier's right to consult an attorney was denied by a 15- to 20-minute delay while he posted bond. Some delay is virtually inevitable between the moment a person in custody asks to speak with an attorney and the time that consultation—presumably by phone—takes place. Surely a 1- or 2-minute delay would not constitute denial of the right. Nor, in my view, does a 15- to 20-minute delay deny that right.

I approve each of the syllabus paragraphs provided in the court's opinion, but I write separately because I do not believe we should speculate about what subjects the person may have wanted to talk with an attorney about. One of the reasons that citizens have a right to talk to an attorney is that the attorney has greater knowledge about the person's rights; the citizen needn't think up all the proper questions to ask in order to get an attorney's advice. But no matter what Richmeier might have talked with his attorney about, I don't find a 15- to 20-minute delay a denial of the right to consult with an attorney. I therefore find no statutory violation and thus no basis to suppress any evidence. Accordingly, I concur in the decision to reverse the district court's suppression order and to remand the case for further proceedings.