NOT DESIGNATED FOR PUBLICATION

No. 127,429

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ELLEN THYFAULT,
*Appellant*.


MEMORANDUM OPINION


Appeal from Ellis District Court; THOMAS DREES, judge. Submitted without oral argument. Opinion filed May 2, 2025. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before PICKERING, P.J., BRUNS and SCHROEDER, JJ.


PER CURIAM: Ellen Thyfault was convicted, among other traffic violations, of a second driving under the influence of alcohol. Thyfault timely appeals the district court's denial of her motion to suppress her evidentiary breath test, claiming she was not provided a reasonable opportunity to obtain an independent blood test by a physician of her choosing. We affirm the district court's denial of Thyfault's motion to suppress, as law enforcement did not impede her ability to obtain an independent blood test.

1

In September 2021, Hays Police Officer Joseph Lantz performed a traffic stop when Thyfault committed two traffic violations. Lantz suspected Thyfault had been drinking and decided to test her ability to safely drive. Thyfault failed the field sobriety tests and subsequently failed an evidentiary breath test at the Ellis County Law Enforcement Center. The State charged Thyfault with a second driving under the influence (DUI) of alcohol for operating a vehicle with a blood alcohol concentration of 0.08 or more, failing to stop at a stop sign, and failing to use a turn signal. The district court conducted a bench trial on stipulated facts in September 2023 and convicted Thyfault of all counts.

Relevant to this appeal, the parties stipulated that Thyfault initially did not want to provide a breath test but would give a blood test. Lantz stated he would take the consensual blood test but it would count as a refusal as he was requesting a breath test. Thyfault was upset and reluctantly submitted to a breath test to prevent a refusal. Lantz properly administered the breath test within three hours of when Thyfault operated a motor vehicle, and the results showed 0.126 grams of alcohol per 210 liters of breath. Thyfault was provided an opportunity to contact her attorney, which was unsuccessful. Lantz then told Thyfault she could check with the Hays Medical Center to obtain an independent blood draw and released Thyfault from custody. Thyfault had a prior diversion for DUI in January 2011.

Prior to the bench trial, Thyfault filed a motion to suppress her evidentiary breath test, asserting law enforcement lacked probable cause to investigate her for DUI and any evidence obtained after the illegal arrest must be suppressed. Specifically, Thyfault asserted she was denied her statutory right to obtain additional testing.

2

Thyfault amended her motion to suppress, claiming, among other things, Lantz did not honor her right to additional testing, which violated her statutory right, and the breath test must be suppressed.

The State moved for summary dismissal of Thyfault's motions to suppress because the motions asserted conclusory contentions. The district court found the motions to suppress were sufficient to merit an evidentiary hearing and conducted a suppression hearing. The district court ultimately determined Lantz had probable cause to arrest Thyfault and Lantz "did not interfere with or hinder [Thyfault's] efforts to seek additional testing."

The district court found Thyfault guilty on all counts and sentenced her to 12 months in jail but suspended the sentence and granted 12 months of probation after she served 2 days.

ANALYSIS

Thyfault argues she was not afforded her right to independent blood alcohol testing after completing the requested evidentiary breath test. Thyfault contends her breath test results should be suppressed, her DUI conviction vacated, and the case remanded to the district court for further proceedings. Thyfault does not contest her traffic violations on appeal.

The State responds the right to independent testing only applies in certain circumstances. According to the State, law enforcement officers have no duty to help a defendant obtain an independent blood test if the defendant is released from custody without unreasonable delay after taking an evidentiary test. The State also suggests Thyfault failed to request an independent blood test after her evidentiary breath test. But the record is clear in that Thyfault wanted a blood test instead of a breath test, was upset

3

the blood test would count as a refusal, and ultimately submitted to the breath test to prevent receiving a refusal. Based on the stipulated facts, it also appears Lantz spoke to Thyfault about obtaining a blood test from the Hays Medical Center shortly before Thyfault was released from custody—after the breath test was completed.

The standard of review of a district court's decision on a motion to suppress has two components. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. *State v. Mendez*, 319 Kan. 718, 735, 559 P.3d 792 (2024). "'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.'" *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). The ultimate legal conclusion, however, is reviewed using a de novo standard. *Mendez*, 319 Kan. at 735. "'If there are no disputed material facts, the issue [of whether to suppress evidence] is a question of law over which the appellate court has unlimited review. [Citations omitted.]'" *State v. Crudo*, 318 Kan. 32, 34, 541 P.3d 67 (2024). We do not reweigh the evidence, assess witness credibility, or resolve evidentiary conflicts. To the extent we must interpret K.S.A. 8-1004, we have unlimited review. *Mendez*, 319 Kan. at 736.

K.S.A. 8-1001(a) states in relevant part:

"Any person who operates or attempts to operate a vehicle within this state may be requested, subject to the provisions of this article, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs. . . . The test must be administered at the direction of a law enforcement officer, and the law enforcement officer shall determine which type of test is to be conducted or requested."

4

K.S.A. 8-1004 states:

"Without limiting or affecting the provisions of K.S.A. 8-1001, and amendments thereto, the person tested shall have a reasonable opportunity to have an additional test by a physician of the person's own choosing. In case the officer refuses to permit such additional testing, the testing administered pursuant to K.S.A. 8-1001, and amendments thereto, shall not be competent in evidence."

Thyfault's argument on appeal rests on whether she was given a reasonable opportunity to have additional testing done by a physician of her choosing and, if not, claims her breath test was inadmissible.

In *State v. George*, 12 Kan. App. 2d 649, 754 P.2d 460 (1988), another panel of this court analyzed the reasonable opportunity standard. The panel stated:

"We hold that there is coupled with a DUI suspect's statutory right to additional testing a corresponding duty on the part of law enforcement officers not to deny the suspect that right. Law enforcement officers may not nullify a right granted to a citizen by the legislature. . . . What is a 'reasonable opportunity' will depend on the circumstances in each case. When a DUI suspect is detained under arrest the opportunity afforded him must be consistent with safe custody. What may be a reasonable opportunity in one locality may not necessarily be reasonable in another.
. . . .
"While the State is not required to provide a DUI suspect with a free additional test, it may not unreasonably interfere with a suspect's reasonable attempts to secure an additional test, at his own expense, by a physician of his own choosing, for the purpose of attempting to secure evidence for his defense at or near the crucial time under consideration. Under the circumstances of this case, we hold [the law enforcement officer], by refusing George's request, did unreasonably interfere with George's effort to procure probative evidence." 12 Kan. App. 2d at 653-55.

In *State v. Messer*, 49 Kan. App. 2d 313, 307 P.3d 255 (2013), Messer was pulled over for a traffic violation and arrested for a DUI offense after performing field sobriety tests poorly and refusing a preliminary breath test. While in custody, Messer performed an evidentiary breath test showing a blood alcohol concentration well over the legal limit. Messer asked for an independent blood test to reassess his blood alcohol concentration. A law enforcement officer told Messer he could obtain a blood test on his own once released from custody, but the officer would not take Messer to get the additional test. In fact, "[t]he officer testified that his department's policy was to take the suspect to get an additional test only if the suspect was to remain in custody." 49 Kan. App. 2d at 315.

The panel noted Messer was released within a "fairly brief" period after requesting an independent test—about 42 minutes—and "less than 2 hours after he had last been observed driving." 49 Kan. App. 2d at 318. Messer did not obtain a blood test after leaving the police station. Messer asked the district court to suppress his breath test because the officer refused to permit additional testing.

The *Messer* panel explained:

> "The officer can't 'refuse[] to permit such additional testing.' But the officer's power over the driver lasts only as long as the driver is in custody. So this tells us that an officer can't keep a person in custody indefinitely without—upon request—taking the person to get the independent test. But if the officer were to release the driver immediately after taking the evidentiary test, the officer couldn't have 'refuse[d] to permit such additional testing' because the driver would no longer have been under the officer's control." 49 Kan. App. 2d at 317.

The panel further explained the driver arrested for DUI has the primary responsibility of obtaining an independent test. The driver can seek such testing if he or she chooses—and must be provided a reasonable opportunity to do so—but the State need not provide the additional test. 49 Kan. App. 2d at 317. The panel affirmed the

6

district court's denial of Messer's motion to suppress his breath test because "Messer had a reasonable opportunity to obtain independent testing, and that's all that the statute requires." 49 Kan. App. 2d at 321.

Thyfault argues the *Messer* panel "held that bright lines rules cannot be applied to this statutorily created right [to additional testing], and then inexplicably, established a bright line rule regarding release from custody." *Messer* suggests a law enforcement officer could not have refused an individual additional testing if the individual was released from custody and was no longer in the officer's control; therefore, if a law enforcement officer released an individual from custody, the individual could not have been refused additional testing and the test administered under K.S.A. 8-1001 would not be withheld from evidence. But *Messer* also notes there is no bright-line test and the "[c]oncepts of 'reasonableness' always bring some element of opinion and subjective judgment into play." 49 Kan. App. 2d at 317.

The panels in *George* and *Messer* both noted the circumstances of each case will determine whether an individual was given a "reasonable opportunity" to obtain an additional blood test. See *Messer*, 49 Kan. App. 2d at 320; *George*, 12 Kan. App. 2d at 653-54. The district court must be mindful that law enforcement is not obligated to help the individual obtain an independent blood test. See *Messer*, 49 Kan. App. 2d at 318.

Here, Thyfault asserts she was not provided a reasonable opportunity to obtain independent testing because:

- Her vehicle was left at the scene where she was pulled over;
- she was wearing high heels, and the hospital was more than 2 miles away;
- Hays does not have a large population, and it was unlikely she would find a taxi or Uber;

- Lantz threatened to certify Thyfault's blood test request as a refusal if she did not take a breath test;

- Lantz knew it was unlikely the lab would provide Thyfault with a blood test without his request for one;

- Lantz could have had dispatch make a call to have the blood test performed at the jail; and

- Lantz knew it was "highly unlikely[] and unreasonable to believe[] that [Thyfault] could obtain a blood test without his minimal assistance."

The district court found that Lantz did not impede Thyfault from obtaining additional testing as Thyfault was released from custody shortly after completing the breath test and apparently chose not to pursue the additional blood test. We find it problematic the record on appeal provides no insight as to what Thyfault did upon her release from jail. And, even if Thyfault went to Hays Medical Center for a blood test after her release, we observe no evidence was presented that the medical staff would have performed the test for her.

We find the district court's factual findings are supported by substantial competent evidence. That is, a reasonable person could accept that law enforcement did not impede Thyfault's ability to obtain a timely independent blood test once she was released from jail. We find the district court did not err in denying Thyfault's motion to suppress, and we affirm Thyfault's DUI conviction.

Affirmed.